UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-11360
_____


THE UNITED STATES OF AMERICA For the
Use of MARSHALL E. WALLACE d/b/a
WALLACE CONSTRUCTION COMPANY, ET AL.,

        Plaintiffs,

MARSHALL E. WALLACE, doing business as Wallace
Construction Company,

        Plaintiff - Counter Defendant
        Appellee-Cross-Appellant,

                        versus

FLINTCO INC.; AMERICAN HOME ASSURANCE CO.,

        Defendants-Counter-Claimants Third Party Plaintiffs
        Appellants-Cross-Appellees,

                        versus

VICTORE INSURANCE COMPANY,

        Third-Party Defendant-Appellee-Cross-Appellant.
_____

        Appeals from the United States District Court
            for the Northern District of Texas
_____
                    June 29, 1998


Before KING and JONES, Circuit Judges, and WERLEIN*, District
Judge.

By EWING WERLEIN, JR., District Judge:

_____

    *District Judge of the Southern District of Texas, sitting by
designation.

This case presents cross-appeals by a contractor and a subcontractor, and their respective bond sureties, from an Amended Judgment entered after a two-week jury trial. After a careful review of the trial proceedings, we conclude that those portions of the Amended Judgment of the district court that award costs to both sides against their respective adversaries, should be VACATED and REMANDED for further proceedings, and that the Amended Judgment, as reformed herein for clarification, should otherwise be AFFIRMED.

Background

The United States Army Corps of Engineers ("Corps") engaged Flintco, Inc. ("Flintco"), a general contractor, to build an enlisted dormitory at Sheppard Air Force Base, Texas, ("the Project"). Flintco, in turn, subcontracted with Marshall E. Wallace d/b/a Wallace Construction Company ("Wallace") for Wallace to perform dirt and paving work on the Project. Flintco and American Home Assurance Co. ("AHAC"), Flintco's surety, furnished a payment bond pursuant to the Miller Act, 40 U.S.C. § 270a; Wallace and Victore Insurance Co. ("Victore"), Wallace's surety, furnished private payment and performance bonds.

Wallace began work on the Project in March 1992. In July 1992, August 1992, and January 1993, Wallace submitted change orders No. 1, No. 2, and No. 3, respectively, for additional

2

compensation. Each was approved, and pursuant to each, Wallace was compensated.

In July 1993, the Corps issued a directive that the compaction of the subgrade of the parking lots be increased from 90% to 95% density. Wallace began this work before submitting a claim to the Corps, through Flintco, for additional compensation. Wallace later submitted the claim, but before the claim was fully processed, Wallace ceased work on the Project and left the Project site on December 23, 1993, leaving his own subcontractors unpaid to the extent of approximately $101,000. Flintco contracted with another dirt and paving subcontractor to complete the unfinished work.

In April 1994, Wallace submitted a "Request for Equitable Adjustment" in which he sought $ 215,292.50 in compensation for the increased compaction. The Corps responded with an award of only $7,000.00. Wallace later submitted an amended claim which was denied.

Wallace filed this suit against Flintco and AHAC for breach of contract and for quantum meruit. Wallace alleged that Flintco, the Corps, and other subcontractors interfered with his work on the Project, and caused him "productivity impact" damages. Flintco and AHAC counterclaimed against Wallace for breach of the subcontract, and filed a third party action against Victore on the performance and payment bonds.

A two-week jury trial resulted in a special verdict for Wallace on all questions submitted. Among other things, the jury

3

found that Flintco breached its contract with Wallace; that Wallace was entitled to a quantum meruit recovery; that Wallace had fulfilled all contractual conditions precedent to filing suit against Flintco and AHAC; and that Flintco and AHAC had breached the Miller Act bond by failing to pay Wallace. Conversely, the jury also found that Wallace had not breached his contract with Flintco; that Wallace was not negligent in performing his work; that Wallace had not waived his claims against Flintco; that Flintco had not fulfilled all contractual conditions precedent to filing suit against Wallace and Victore; that Flintco did not acquire from Wallace's subcontractor creditors their claims against Victore; and that Wallace and Victore did not breach their obligations to Flintco under the payment bond. The jury awarded $197,777.00 to Wallace and awarded nothing to Flintco.

Wallace moved for entry of judgment; and Flintco and AHAC filed a "Motion for Judgment Notwithstanding the Verdict" under Fed. R. Civ. P. 50(b).[1] The trial court granted in part Flintco's and AHAC's Rule 50(b) motion, holding as a matter of law that they were entitled to recover from Wallace and Victore approximately $101,000 that they had paid to Wallace's subcontractors whom Wallace had not paid when he ceased work on the Project. The trial

---

[1] The correct terminology under Rule 50(b) is now "renewed motion for judgment as a matter of law," although, as will be seen, Flintco and AHAC did not initially file a Rule 50(a) motion for judgment as a matter of law.

4

court ultimately signed an Amended Judgment, which is summarized as follows:

> !    Judgment for Wallace against Flintco on Wallace's state law quantum meruit claim for:
>
>> "1.    Actual damages in the amount of $197,777.00;
>>
>> "2.    Pre-judgment interest thereon in the amount of $62,681.85;
>>
>> "3.    Post-judgment interest on all amounts awarded in item numbers one and two above at the currently prevailing rate pursuant to 28 U.S.C. § 1961 of 5.90% per annum, compounded daily, from the date of this judgment until paid."

R. Vol. 13 at 3776-77 (footnotes omitted).

> !    A take nothing Judgment on Wallace's claim for breach of contract against Flintco;[2]
>
> !    Judgment for Wallace and against Flintco and AHAC, jointly and severally, on Wallace's Miller Act payment bond claim for:
>
>> "1.    Actual damages in the amount of $197,777.00;
>>
>> "2.    Pre-judgment interest thereon in the amount of $62,681.85;
>>
>> "3.    Post-judgment interest on all amounts awarded in item numbers one and two above at the currently prevailing rate pursuant to 28 U.S.C. § 1961 of 5.90% per annum, compounded daily, from the date of this judgment until paid."

Id. at 3777.[3]

---

[2]    This aspect of the Amended Judgment was based on Wallace's election to recover on his quantum meruit theory rather than for breach of contract.

[3]    It appears that the trial court did not intend for this three-numbered segment of the Amended Judgment and the first three-

5

! A take nothing judgment on Flintco and AHAC's breach of contract claim against Wallace;

! Judgment for Flintco and AHAC and against Wallace and Victore, jointly and severally, on their third-party payment bond claim in the amount of $101,187.30, plus pre-judgment interest in the amount of $30,834.13, and post-judgment interest at a rate of 5.90%;

! A take nothing Judgment on Flintco and AHAC's third party performance bond claim against Victore;

! $73,778.43 in costs recoverable by Flintco and AHAC from Wallace and Victore, jointly and severally;

! $90,091.00 in costs recoverable by Wallace from Flintco and AHAC, jointly and severally;

! $256,338.00 in attorneys' fees recoverable by Wallace from Flintco; and

! $183,425.78 in attorneys' fees recoverable by Flintco from Wallace.

It is this Amended Judgment that is the subject of the cross appeals in almost every respect.

---

numbered segment of the Amended Judgment, first quoted above, to be a double recovery for Wallace, and the parties have not argued a contrary understanding. The Amended Judgment is intended to make one award to Wallace in the amount of $197,777.00, plus prejudgment interest of $62,681.85 and post-judgment interest, but adjudged against Flintco on two grounds -- on quantum meruit, in the first segment, and on the Miller Act payment bond, in the second segment. The joint and several liability of Flintco's surety, AHAC, for that full sum arises only from its obligation on the Miller Act payment bond, in the second segment. For clarification, and to avoid any ambiguity about Wallace's entitlement to recover only one sum of $197,777.00, plus interest, the Amended Judgment will be reformed to consolidate these two decretal segments.

The Amended Judgment also orders that post-judgment interest be compounded daily. This is plain error; post-judgment interest is "*computed* daily to the date of payment" but "*compounded* annually." 28 U.S.C. § 1961(b) (emphasis added).

I.   Quantum Meruit and Miller Act Claims

Flintco and AHAC first challenge the sufficiency of the evidence to support a judgment for Wallace on his quantum meruit and Miller Act claims because the Flintco-Wallace subcontract contained a "no damages for delay" clause.  In response, Wallace contends that Flintco failed to move for a "directed verdict"[4] at the close of the evidence and thereby waived its right to appellate review of the sufficiency of the evidence.  Wallace therefore contends that this Court must review Flintco's and AHAC's arguments as if they are presented for the first time on appeal, under the plain error standard.

A.   Standard of Review

Challenges to the sufficiency of the evidence must be raised in a Fed. R. Civ. P. 50(a) motion for judgment as a matter of law before submission of the case to the jury.  If the trial court does not grant a motion for judgment as a matter of law made after the close of all the evidence, then the movant may renew its request for judgment as a matter of law after the entry of judgment.  Fed.

---

[4]   The correct terminology under Rule 50(a) is now "motion for judgment as a matter of law."  *See* McCann v. Texas City Ref., Inc., 984 F.2d 667, 670 n.3 (5th Cir. 1993).

R. Civ. P. 50(b).  A party that fails to move for judgment as a matter of law under Rule 50(a) on the basis of insufficient evidence at the conclusion of all of the evidence waives its right to file a renewed post-verdict Rule 50(b) motion, and also waives its right to challenge the sufficiency of the evidence on appeal. Bay Colony, Ltd. v. Trendmaker, Inc., 121 F.3d 998, 1003 (5th Cir. 1997) ("Generally, a party who fails to renew his motion for directed verdict at the close of all the evidence waives his right to challenge the sufficiency of the evidence."); Polanco v. City of Austin, Tex., 78 F.3d 968, 974 (5th Cir. 1996) ("Where the defendant failed to timely move for judgment as a matter of law, we will consider the issue as waived by the defendant and will treat the issue as being raised for the first time on appeal."); Allied Bank-West, N.A. v. Stein, 996 F.2d 111, 114-115 (5th Cir. 1993) (a district court cannot consider a Rule 50(b) motion for judgment as a matter of law unless the movant has first sought a directed verdict).

The Rule serves two purposes:

> to enable the trial court to re-examine the sufficiency of the evidence as a matter of law if, after verdict, the court must address a motion for judgment as a matter of law, and to alert the opposing party to the insufficiency of his case before being submitted to the jury.

MacArthur v. University of Tex. Health Ctr. at Tyler, 45 F.3d 890, 897 (5th Cir. 1995).  Rule 50(b) is to be examined and applied "`in the light of the accomplishment of [its] particular purpose[s] as well as in the general context of securing a fair trial for all

concerned in the quest for truth.'"  Bay Colony, 121 F.3d at 1003 (quoting McCann, 984 F.2d at 671 (alterations in original)).

In certain cases in which a party has failed to meet the technical requirements of Rule 50(a) but has still satisfied the Rule's purposes, non-compliance has been excused.  *See, e.g.*, id. at 1003-04 (defendant's motion for directed verdict at the close of plaintiff's case-in-chief, which asserted that there was no evidence or insufficient evidence for the issue to go to the jury, and defendant's subsequent objections, on the same grounds, to the proposed jury charge, satisfied the purposes of Rule 50(b)); Polanco, 78 F.3d at 974-75 (defendant's motion for judgment as a matter of law at the close of plaintiff's case, which was taken under advisement by the court and followed by the presentation of thirteen defense witnesses and no rebuttal witnesses, alerted plaintiff and the court to defendant's challenge to the sufficiency of plaintiff's proof).  Although Rule 50's requirements have been liberally construed in this circuit, Hinojosa v. City of Terrell, Tex., 834 F.2d 1223, 1228 (5th Cir. 1988), *cert. denied*, 493 U.S. 822, 110 S. Ct. 80 (1989), "[e]ven with a liberal interpretation [of Rule 50(b)], . . . this circuit has never completely disregarded the requirement that the defendant must move for judgment as a matter of law at the close of all the evidence." Polanco, 78 F.3d at 974.

10

Flintco did not do so. It neither moved for judgment as a matter of law under Rule 50(a) at the close of Wallace's case or at the close of all the evidence. Moreover, Flintco did not challenge the sufficiency of the evidence in connection with or as a basis for making objections to the court's jury charge. Nonetheless, Flintco contends that the purposes of the Rule were satisfied by its attempt to comply with the Rule's requirements, by the trial court's perceived understanding of Flintco's unstated insufficiency points and disinclination to hear the motions until after a verdict was received, and by Flintco's general objections to certain issues being submitted to the jury. The Court disagrees, although the argument requires a careful review of the record.

At the close of Wallace's evidence, Mr. Sessions, Flintco's counsel, stated his desire to present "certain motions," to which the trial court replied that motions could be presented at the lunch recess. R. Vol. 21 at 706, lines 5-11.[5] During a recess later that morning, but before the lunch recess, the trial court

[5] The exchange occurred as follows:

Mr. Sessions stated, "Your Honor, I believe it's at this time traditionally when we present certain motions to the Court. I believe the Court has already indicated -- "

The trial court interjected, "We can do that at lunch time."

Mr. Sessions responded, "That'll be fine. We'll go forward with it," and proceeded to call Flintco's first witness. R. Vol. 21 at 706, lines 5-11.

11

informed counsel that such matters would be considered instead during a recess "a little after" lunch.  Id. at 783, lines 1-4.[6] During the same exchange, the trial court commented, "I suspect I'm going to have a motion here that I told Mr. Sessions would be deferred so I have some legal decisions to make here on the current state of this record . . . ."  Id. at 787, lines 10-13.  During the recesses and the hearings outside the presence of the jury that followed, Flintco addressed a number of matters with the court but never reminded the court of Flintco's previously-indicated desire to present "certain motions," and never moved for judgment as a matter of law based on the evidence at the close of Plaintiff's case-in-chief.

At the close of Defendants' evidence[7] and before submission of the case to the jury, the Court observed that motions had not been "formally made" because the Court had "cut [] off" Mr. Sessions. R. Vol. 22 at 947, lines 15-17.  The Court then stated that motions could be made post-verdict.[8]  R. Vol. 22 at 947, lines 17-22; R.

---

[6]  Specifically, the trial court stated, "There's been a change in plans.  What I told you we were going to do at lunch time, we'll do a little after and take a break about then.  I'll just let you know as we go."  R. Vol. 21 at 783, lines 1-4.

[7]  Wallace presented no witnesses in rebuttal.

[8]  Specifically, the trial court stated, "I know that although it was not formally made because I cut everyone off or cut you off, Mr. Sessions, any type of motion practice anyone may have with regard to claims by the opponents can all be taken up post verdict. There's no point in me deciding something if I don't have to decide it.  The Jury decides it for me.  But -- well, that speaks for itself."  R. Vol. 22 at 947, lines 15-22.

12

Vol. 23 at 996, lines 2-4, 14-23. Flintco did not object to the trial court's deferral of the parties' "motion practice," and again did not orally attempt to present a motion for judgment as a matter of law. Moreover, Flintco did not file a written motion for judgment as a matter of law.

The next morning during a lengthy jury charge hearing held outside of the presence of the jury, Flintco objected to certain instructions and portions of the proposed charge, including portions addressing its liability under quantum meruit and the Miller Act. The court sustained some of the objections and modified the instructions. Flintco made no objection to the proposed charge, however, on grounds pertaining to the sufficiency of the evidence. R. Vol. 23 at 973-983, 985-987. In particular, Flintco made no objection that there was insufficient evidence to warrant submission of liability issues on Wallace's breach of contract, quantum meruit, and Miller Act claims or submission of damages questions related to those claims.

After hearing the parties' objections to the proposed jury charge and making certain changes in the charge, the trial court commented,

> One other thing so that -- so that you aren't blind sided or no one is blind sided, and I'm saying this to let you know so that it's on the record, and I have not formulated any final opinions one way or another, but after sitting here for two weeks and listening to this case and looking at everything again, I want to let you know that there was no motion -- you can make all this post-verdict, but I, as a matter of law, am concerned

13

about two things.  And one is that -- is the partial summary judgment Mr. Sessions filed against Victore about conditions precedent about the materials and whether that was triggered or not.  And we can talk about that later and revisit that issue, but I'm even more concerned about the damage -- the aspect of damages that the Plaintiff proved and whether or not as a matter of law that a reasonable fact finder could could [sic] find -- find that.

I'm just putting you on notice now so you won't think it's something I haven't been thinking about all along, but there are motions, but I am going to go ahead and get the jury verdict.

Id. at 995-996.

In sum, when Plaintiff rested his case-in-chief, Flintco's counsel observed that "it's at this time traditionally when we present certain motions to the court."  R. Vol. 21 at 706, lines 5-7.  That was the one and only allusion ever made by defense counsel of a desire to make a motion for judgment as a matter of law under Rule 50(a).  At the close of all of the evidence and before submission of the case to the jury, Flintco never filed a written Rule 50(a) motion; never asked to make an oral Rule 50(a) motion; never objected to the trial court's statement that "any type of motion practice . . . can all be taken up post-verdict"; never stated the grounds that would form the basis of a motion for judgment as a matter of law if one were to be made, either in writing or orally; never insisted upon its right either to file or orally to make a Rule 50(a) motion even though the court chose not to rule upon it until after a verdict; and never voiced objections

14

to the submission of liability and damage questions on grounds of insufficiency of evidence.

Flintco argues that the purposes of Rules 50(a) and (b) were served by the trial court's above-quoted comment that he was "concerned" about "the aspect of damages that the Plaintiff proved and whether or not as a matter of law that a reasonable factfinder could find -- find that." R. Vol. 23 at 996, lines 9-13. Flintco argues that the judge's comment relates solely to the insufficiency of Plaintiff's evidence as a matter of law and that the purposes of Rule 50 were thereby served. Flintco, however, did not follow up the trial court's comment with a Rule 50(a) motion. Nor did Flintco state on the record what would be the basis of such a motion had one been made. Under Rule 50(a), a movant is required to "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2). Flintco never did this.

It is not enough for a party to rely upon "concerns" volunteered by a trial judge as a substitute for making a Rule 50(a) motion. Not even a court of appeals, in holding that there was sufficient evidence to send to the jury a question on gross negligence and reversing the case for retrial on that issue, can excuse the defendant from making a Rule 50(a) motion before the case is submitted to the jury in the new trial. This is what happened in Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc., 800 F.2d 1553 (11th Cir. 1986). On retrial, the defendant did not

15

make a motion for directed verdict on the gross negligence issue because the court of appeals had previously ruled that the evidence was sufficient to require its submission and because defendant viewed the court of appeals' decision as having declared the law of the case.  Id. at 1557.  After the new verdict was returned for plaintiff, the trial court granted a judgment notwithstanding the verdict.  On appeal from this judgment, the Eleventh Circuit Court of Appeals held that the failure of defendant to have made a Rule 50(a) motion limited the court's review to a determination of plain error.  Id.  The appellate court wrote that although defendant's reasons for having not made a Rule 50(a) motion were

> persuasive to some extent, we note that counsel sometimes must take certain required, albeit formalistic, steps to preserve the rights of their client and to perfect the record for post-verdict proceedings.
>
> Objections, proffers, and motions are frequently required in trials even when it may seem certain to the pertinent lawyer that the trial judge's view is that such efforts ought not to prevail.  Of course, almost nothing is really certain in litigation; `[i]ndeed, it is always probable that something improbable will happen.' *Warren v. Purtell*, 63 Ga. 428, 430 (1879) (Bleckley, J.).  Thus, it is hard to know when some act would have been truly useless.  In any event, orderly and definite procedural steps are necessary to sharpen the issues before the court and to avoid misunderstanding.  While it is true that this Circuit has not been strict about motions for directed verdicts, we cannot depart completely from Rule 50(b).

Id.  In the instant case, Flintco, in arguing now that it should be excused for not having made the motion because of the trial court's volunteered declaration of its "concerns" about the evidence, has

a far less cogent excuse than that given by the defendant in <u>Sims'</u> <u>Crane</u>.  The Eleventh Circuit summarized the law as follows:

> A lawyer who never moves for directed verdict, given the wording of Rule 50(b) and the clear case law regarding the effect of such a decision -- regardless of the reasons for such a decision, must realize that a subsequent motion for jnov can be granted only if plain error can be proven.

<u>Id.</u>; *see also* <u>McCann</u>, 984 F.2d at 672 ("While it is true that this Circuit approaches such questions [about compliance with Rule 50(b)] with a `liberal spirit,' we are not willing to rewrite the Federal Rules of Civil Procedure.") (internal citation omitted).

Because Flintco made no Rule 50(a) motion and did not specify what judgment was sought and the law and the facts that would entitle Flintco to such a judgment, we conclude that the second purpose of Rule 50 -- to alert Wallace to the specific grounds for an anticipated challenge to the sufficiency of its proof and to allow Wallace the opportunity to move to cure any such deficiency -- was not served.  In that the purposes of Rule 50 were not met, non-compliance with the Rule cannot be excused.  <u>McCann</u>, 984 F.2d at 671 ("In each case where we have excused noncompliance with Rule 50(b), this Court has concluded that the *purposes* of the rule had been satisfied.") (emphasis in original); *see, e.g.*, <u>Guilbeau v.</u> <u>W.W. Henry Co.</u>, 85 F.3d 1149, 1160 (5th Cir. 1996) (the purpose of Rule 50(a)'s requirement that a motion for judgment as a matter of law specify the law and the facts upon which the moving party

17

relies "is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment") (citing Fed. R. Civ. P. 50 advisory committee's note (1991 amendment)), *cert. denied*, ___ U.S. ___, 117 S. Ct. 766 (1997); <u>Hinojosa</u>, 834 F.2d at 1228 ("In this case [defendant] did not at any time move for a directed verdict in his favor . . . , nor did he object to the submission of any of the interrogatories pertaining to these claims on the ground that the claims were unsupported by the evidence. . . . [Defendant thus] failed to alert [plaintiff], prior to submission of the case to the jury, to the possibility that insufficient evidence was presented . . . .").

Because of Flintco's non-compliance with Rule 50(a), we must consider Flintco's objections to the sufficiency of Wallace's evidence on its quantum meruit and Miller Act claims as though they were raised for the first time on appeal. <u>Polanco</u>, 78 F.3d at 974. "It is the unwavering rule in this Circuit that issues raised for the first time on appeal are reviewed only for plain error. In other words, this Court will reverse only if the judgment complained of results in a `manifest miscarriage of justice.'" <u>McCann</u>, 984 F.2d at 673 (internal citation omitted). On plain error review "the question before this Court is not whether there was substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict." <u>Id.</u>

18

(emphasis in original).  If *any* evidence supports the jury verdict, the verdict will be upheld.  <u>Polanco</u>, 78 F.3d at 974.

B.  <u>Discussion</u>

Flintco challenges the sufficiency of the evidence to support the jury verdict on Wallace's quantum meruit and Miller Act claims. Flintco specifically argues that Wallace's damages are precluded by the "no damages for delay" clause in the parties' subcontract, that there is insufficient evidence to support the amount of damages awarded by the jury, and insufficient evidence of the actual "out of pocket expenses" Wallace incurred in support of a verdict on the Miller Act claim.  Because our review is under the plain error standard, the jury verdict in Wallace's favor on its quantum meruit and Miller Act claims will be upheld unless there is no evidence to support the jury's verdict on those claims.

1. <u>There is some evidence that Wallace's damages fall outside of the "no damages for delay" clause in the parties' subcontract.</u>

The "no damages for delay" clause at issue provided:

In the event delays in the performance of this Subcontract are occasioned by FLINTCO, Owner, Architect or some other subcontractor, an extension of time for the completion of this Subcontract shall be granted for a period of time equal to the delay caused to Subcontractor. Such extension of time shall be in lieu and in full satisfaction of any and all claims whatsoever of Subcontractor against Owner, Architect, FLINTCO or other subcontractor causing such delay.

R. Excerpt 5D to Appellant's Brief at ¶ 11. Clauses such as this have been upheld under Texas law, and have been found to bar damage claims that are based on delay. <u>United States</u> *ex rel.* <u>Straus Sys., Inc. v. Associated Indem. Co.</u>, 969 F.2d 83, 85 (5th Cir. 1992) (applying Texas law to "no damages for delay" clause); <u>City of Houston v. R.F. Ball Constr. Co.</u>, 570 S.W.2d 75, 77 (Tex. Civ. App.--Houston [14th Dist.] 1978, writ ref'd n.r.e.). "No damages for delay" clauses will be strictly construed and enforced unless the delay at issue (1) was not contemplated by the parties; (2) was so long as to justify abandonment of the contract; (3) was caused by fraud, misrepresentation, or bad faith; or (4) was caused by actual interference with the performance required under the contract. <u>R.F. Ball</u>, 570 S.W.2d at 77 & n.1.

Wallace argues that his complaint is not one of delay within the meaning of the "no damages for delay" clause, but is for

20

Flintco's active interference and hindrance of Wallace's performance. Indeed, a leading Texas decision on this subject upheld damages, notwithstanding a "no damages for delay" clause, where the defendant was found to have committed the following acts and omissions:

> (1) Failure to plan development and construction of whole project; (2) Failure to furnish master progress schedule; (3) Failure to coordinate work of various prime contractors; (4) Failure to proceed with underground utilities contract until August 1, 1952; (5) Failure to proceed with the sidewalks contract until July 1, 1953; (6) Failure to expedite flow of information; (7) Failure to decide on type of water heaters; (8) Failure to deliver water heaters; (9) Arbitrary and capricious requirements of Architects; (10) Instructions to asphalt tile sub-contracts; (11) Refusal to accept the buildings within reasonable time after August 25, 1953.

Housing Auth. of Dallas v. Hubbell, 325 S.W.2d 880, 890 (Tex. Civ. App.--Dallas 1959, writ ref'd n.r.e.). The Court explained:

> [T]he `no-damage-for-delay' provision did not give Owner a license to cause delays `willfully' by `unreasoning action', `without due consideration' and in `disregard of the rights of other parties', nor did the provision grant Owner immunity from damages if delays were caused by Owner under such circumstances.

Id. at 891.

In the instant case, there is evidence from Rodney Wallace, Ed Wallace, and Donald McDonald that Flintco, and the other subcontractors on the site over which Flintco had control, disrupted and actively interfered with Wallace's performance under the subcontract. That disruption and active interference consisted of (1) Flintco's failure properly to coordinate and sequence the

21

work done by all the subcontractors on the job; (2) Flintco's direction of Wallace to small, piecemeal jobs on the site; (3) Flintco's failure to ensure that its other subcontractors removed their materials and debris from the areas in which Wallace had to work; (4) Flintco's improper surveying and staking of an area around two of the buildings on the project that required Wallace to regrade areas it believed had been completed to specifications; (5) Flintco's failure to locate timely and remove physical obstacles (power poles and a gas line) from the areas in which Wallace had to work; and (6) Flintco's failure to ensure that the work Wallace had completed was not adversely affected by the other subcontractors on the site. This disruption and interference, according to the testimony of Rodney Wallace, Ed Wallace, and Donald McDonald, caused Wallace to suffer productivity impacts, resulting in increased labor costs, increased equipment costs, and increased overhead expenses. Because the record contains some evidence that the actions of Flintco constituted active interference with Wallace's performance and that Flintco breached the contract, and because Texas law recognizes that a "no damages for delay" clause does not preclude a contractor from recovering damages when the delay is caused by active interference with the contractor's performance,[9] there is no plain error in the Court's submission of

---

[9] Flintco relies on Black Lake Pipe Co. v. Union Constr. Co., Inc., 538 S.W.2d 80, 86 (Tex. 1976) to argue that Wallace cannot recover in quantum meruit because the damages it claims are covered by the parties' contract. Black Lake Pipe, however, does not

22

questions and the jury's findings on Flintco's liability and Wallace's damages.

> 2. <u>There is some evidence to support the amount of damages awarded to Wallace by the jury on the quantum meruit claim.</u>

Damages must be proven to a reasonable certainty, but mathematical precision is not required.

> All that the law requires is that the best evidence of which a case is susceptible be produced, and if from such evidence the amount of damages caused by the defendant can be inferred or estimated by the jury with reasonable certainty, then the amount of such damages is for the jury.

<u>Bildon Farms, Inc. v. Ward County Water Improvement Dist. No. 2</u>, 415 S.W.2d 890, 897 (Tex. 1967); *see also* <u>South Builders, Inc. v.</u>

---

preclude Wallace from obtaining a quantum meruit recovery. When a general contractor actively interferes with its subcontractor's performance, the subcontractor may "treat the contract as rescinded and recover under quantum meruit the full value of the work done." <u>McCracken Constr. Co. v. Urrutia</u>, 518 S.W.2d 618, 621-22 (Tex. Civ. App.--El Paso 1974, no writ); *see also* <u>United States *ex rel.* Aucoin Elec. Supply Co. v. Safeco Ins. Co. of Am.</u>, 555 F.2d 535, 542 (5th Cir. 1977) (when general contractor prevents performance, subcontractor may recover in quantum meruit); <u>Citizens Nat'l Bank v. Vitt</u>, 367 F.2d 541, 546 (5th Cir. 1966) ("`Once a subcontractor has established a breach of contract by the prime, he can recover the value of the work he has done or the service he has rendered. In other words, he is entitled to a quantum meruit.'") (quoting McBride and Wachtel, <u>Government Contracts</u> 49-185, § 49.150(4)); <u>Kleiner v. Eubank</u>, 358 S.W.2d 902, 905 (Tex. Civ. App.--Austin 1962, writ ref'd n.r.e.). In this case, the jury found in response to Jury Question No. 1 that Flintco had breached the parties' contract. Given that finding of a breach by Flintco, Wallace was entitled to "treat the contract as rescinded and recover under quantum meruit the full value of the work done." <u>Kleiner</u>, 358 S.W.2d at 905.

Brown, 449 S.W.2d 542, 548 (Tex. Civ. App--Eastland 1969, writ ref'd n.r.e.) (a subcontractor suing a general contractor for breach of the subcontract is required to prove his damages in such detail that the jury can make an estimate of the damages with reasonable certainty).  In reviewing whether damages have been proven to a reasonable certainty, all evidence is to be considered in the light most favorable to the party that was awarded damages. Thompson and Wallace of Memphis, Inc. v. Falconwood Corp., 100 F.3d 429, 435 (5th Cir. 1996).

Donald McDonald, Wallace's damages expert, testified without objection to his estimate of quantum meruit damages in the amount of $297,643.88.  R. Vol. 17 at 149-151, 156.  The estimate appears not to have been based on the reasonable value of the work performed but instead, like his estimate of contract damages, on man and machine hour averages.  This methodology has been accepted in calculating damages in construction cases.  *See* U.S. Indus., Inc. v. Blake Constr. Co., Inc., 671 F.2d 539, 547 (D.C. Cir. 1982); *see also* Servidone Constr. Corp. v. United States, 931 F.2d 860, 861-62 (Fed. Cir. 1991) (modifying the total cost method to account for bid inaccuracies was a proper method of calculating damages); Neal & Co., Inc. v. United States, 36 Fed. Cl. 600, 638 (Fed. Cl. 1996), *aff'd*, 121 F.3d 683 (Fed. Cir. 1997) (allowing modified total cost method of calculating damages).  We have found no precedent, however, specifically approving the use of this

24

methodology to prove quantum meruit damages. Nonetheless, given our inability to review the sufficiency of the evidence and the fact that there is some evidence of quantum meruit damages in the approximate amount of $297,000, the jury's award of $197,777.00 to Wallace on its quantum meruit claim does not constitute plain error.

3. <u>There is some evidence to support the judgment awarding damages to Wallace on the Miller Act claim.</u>

Under the Miller Act, 40 U.S.C. § 270b, only out-of-pocket costs of delay are recoverable. In awarding Miller Act damages, the district court must be assured that the subcontractor did not cause the delay and then "carefully limit the recovery to 'costs *actually expended* in furnishing the labor or material in the prosecution of the work provided for in the contract.'" <u>United States *ex rel*. Lochridge-Priest, Inc. v. Con-Real Support Group, Inc.</u>, 950 F.2d 284, 287 (5th Cir. 1992) (quoting <u>United States *ex rel*. T.M.S. Mechanical Contractors, Inc. v. Millers Mut. Fire Ins. Co. v. The Craftsmen, Inc.</u>, 942 F.2d 946, 952 (5th Cir. 1991)) (emphasis in original).

The Miller Act claim was submitted to the jury as follows:

QUESTION NO. 14:

INSTRUCTIONS:

AHAC issued a Miller Act bond to the Army Corps of Engineers on behalf of Flintco in order to protect anyone who furnishes labor and material for the construction, to insure that they will be paid. A person is entitled to payment under the Miller Act bond if he has furnished labor or materials which, in good faith, were believed to be necessary and furnished, or incorporated into the project, for the work to be performed under the construction contract, and if he has not been paid in full for that work within 90 days after the last day on which the labor was done or the materials were furnished. Generally, where a subcontractor is entitled to recover from a general contractor for breach of contract or quantum meruit, the subcontractor may recover from the general contractor, as principal, and its surety under the Miller Act bond.

26

In this case, the Army Corps of Engineers required Flintco to furnish bonds guaranteeing that should Flintco fail to pay its project bills or complete the contract work, a bonding company or surety would do so. The Miller Act imposed upon Flintco an obligation to furnish to the Army Corps of Engineers separate payment and performance bonds to guarantee the contract in question. These two bonds were executed by Flintco and its contract surety, AHAC, in favor of the Army Corps of Engineers.

**QUESTION:**

Do you find from a preponderance of the evidence that Flintco and American Home Assurance Company breached the Miller Act bond by failing to pay Wallace Construction Company?

**ANSWER:**    yes
        (yes or no)

R. Vol. 11 at 3070. A separate damage question on the Miller Act claim was not submitted. Neither party made a request for a separate damage question or objected to its omission. Consequently, the trial court determined that damages on the Miller Act claim were the same as those found by the jury in response to Jury Question No. 6:

**QUESTION NO. 6:**

. . . what sum of money, if any, if paid now in cash, would fairly compensate Wallace Construction Company for labor, material, or services that they provided Flintco which remain unpaid by Flintco, if any?

**ANSWER:**   $197,777.00

R. Vol. 11 at 3068.

On appeal, Flintco and AHAC challenge the damage award on the Miller Act claim on the basis that Wallace presented no evidence of

27

the *actual* labor, material and equipment costs it had expended and for which it had not been paid. Neither Wallace nor AHAC made this objection before submission of the case to the jury. Thus, the award of damages to Wallace on its Miller Act claim is reviewed only for plain error to determine whether "there is *any* evidence to support the amount of damages" awarded to Wallace. Resolution Trust Corp. v. Cramer, 6 F.3d 1102, 1107-08 (5th Cir. 1993) (emphasis in original); *see also* House of Koscot Dev. Corp. v. American Line Cosmetics, Inc., 468 F.2d 64, 68 n.5 (5th Cir. 1972) (When sufficiency of the evidence is not preserved for review, "we may inquire whether there was any evidence supporting the issue of damages to the jury, even though we may not question the sufficiency of such evidence as we do find."); United States v. 33.5 Acres of Land, 789 F.2d 1396, 1400-1401 (9th Cir. 1986) (upholding on plain error review a damage award that was $36,000 less than the expert's damage calculation).

Expert testimony was received from Donald McDonald. Based upon his review of numerous records and logs, including among others Wallace's certified payroll records, Wallace's daily records that showed the use of the equipment on the project, and the Corps's cost rates for equipment, McDonald found that Wallace had suffered net damages in the total amount of approximately $297,000. There is evidence that at least to some extent McDonald considered sums actually expended by Wallace. To engage in a detailed

28

analysis of all of the elements considered by McDonald, such as Wallace's costs of labor, equipment, and material, would require a review of the sufficiency of the evidence, which we cannot do. In this review only for plain error, we observe that McDonald included in his estimate at least some elements that are properly recoverable under the Miller Act, that the district court granted judgment in favor of Wallace on his Miller Act payment bond claim in an amount which was approximately $100,000 less than the net damage figure to which McDonald testified, and that Flintco and AHAC have failed to demonstrate that any improper elements of damages included in McDonald's estimate of damages, if entirely disregarded, would leave the trial court's judgment on damages without any support in the evidence. We find that the trial court did not commit plain error by entering judgment in Wallace's favor in the amount of $197,777.00 on the Miller Act claim.

## II. Flintco's Claim that Wallace Breached the Subcontract

Flintco's final argument is that the trial court erred in sustaining the jury's finding that Wallace had not breached the subcontract by abandoning the work. Flintco contends that it had proved beyond a preponderance of the evidence, and as a matter of law, that Wallace had so breached the contract, and that the trial court erred by failing to disregard the jury's answers that Wallace had not breached its contract with Flintco, and that Flintco was entitled to no recovery of damages from Wallace.

A.    Standard of Review

Unlike the preceding points where Wallace had the burden of proof and Flintco attempted to challenge the sufficiency of the evidence to support findings favorable to Wallace, on this point -- that of proving that Wallace breached the subcontract -- Flintco had the burden of proof.  A claimant who bears the burden of proof and who believes that he is entitled to judgment as a matter of law, is also obliged to move for judgment as a matter of law before the case is submitted to the jury.  Fed. R. Civ. P. 50(a); *see, e.g.,* Bender v. Brumley, 1 F.3d 271, 275 (5th Cir. 1993) (plaintiff's failure to move for directed verdict on his federal claims at the close of all evidence limited the court of appeals to a review of whether any evidence supported the jury verdict); Illinois Cent. Gulf R.R. Co. v. International Paper Co., 889 F.2d 536, 541 (5th Cir. 1989) (given the plaintiff's failure to move for directed verdict at the close of evidence, the court of appeals could only review the evidence to support the jury verdict for plain error); Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978) (absent motion for directed verdict, appellate court cannot review jury verdict for sufficiency of the evidence); Rawls v. Daughters of Charity, 491 F.2d 141, 147 (5th Cir.) (same), *cert. denied*, 419 U.S. 1032, 95 S. Ct. 513 (1974); Parker v. American Oil Co., 327 F.2d 987, 988 (5th Cir. 1964) (same); McCarty

30

<u>v. Pheasant Run, Inc.</u>, 826 F.2d 1554, 1555-56 (7th Cir. 1987) (motion for directed verdict is a prerequisite to judgment notwithstanding the verdict). If a party with the burden of proof has conclusively established all of the elements of its claim with evidence that the jury cannot reject, that party must move for judgment as a matter of law under Rule 50(a) at the close of all evidence in order to preserve its ability, in the event that the jury finds to the contrary, to move for judgment as a matter of law under Rule 50(b). *See* <u>id.</u> Otherwise, the claimant must depend on the plain error standard for review or move for a new trial under Rule 59.[10]

At the close of all evidence on its breach of contract claim against Wallace, Flintco did not move under Rule 50(a) for judgment as a matter of law. Given Flintco's failure to make such a motion, and because no exception to the requirement has been shown to apply, Flintco waived its right to file a renewed motion for judgment as a matter of law under Rule 50(b). Therefore, the plain error standard of review applies.

---

[10] 9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2539 (2d ed. 1995) ("The availability of the alternative motion for a new trial is beneficial also to the party who has lost a verdict and who would be entitled to judgment as a matter of law save for some procedural blunder. For example, the evidence may be wholly insufficient to support the verdict but the trial court cannot order judgment as a matter of law under Rule 50(b) if the party neglected to move for judgment at the close of all the evidence or if the party did not properly renew the motion after the unfavorable verdict was returned.").

B.   Discussion

Wallace introduced evidence that it was Flintco that first breached the subcontract by requiring Wallace to perform work for which he was not paid.  Wallace also offered evidence of numerous acts and omissions by Flintco that Wallace relied upon for proof of Flintco's active interference with Wallace's performance.  Under Texas law, if one party to a contract breaches, there is no obligation for the non-breaching party to continue performance. *See* O'Shea v. International Bus. Machs. Corp., 578 S.W.2d 844, 846 (Tex. Civ. App.--Houston [1st Dist.] 1979, writ ref'd n.r.e.) ("As a general rule, performance is excused when a party to a contract prevents the other party from performing."); L. H. Land Painting Co., Inc. v. S & P Constr., Inc., 516 S.W.2d 14, 16 (Tex. Civ. App.--Fort Worth 1974, writ dism'd) ("The law is that if one party to a contract is prevented by the acts of the other party to the contract from performing such contract, then the party so prevented from performing is excused from further performance of the contract.");  *see also* D.E.W., Inc. V. Depco Forms, Inc., 827 S.W.2d 379, 382 (Tex. App.--San Antonio 1992, no writ) ("[A] party who is in default or breach cannot maintain a suit for breach of contract."). Given that there is some evidence of record that Flintco first breached the subcontract, there is no plain error associated with the jury verdict against Flintco on its claim that Wallace breached the contract.

III. <u>Wallace's and Victore's Payment Bond Liability to Flintco</u>

Wallace's and Victore's first three points on their cross-appeal against Flintco and AHAC relate to the trial court's disregarding the jury answers and entering judgment for Flintco and AHAC for recovery of $101,187.30, plus prejudgment interest, on their payment bond claim. Flintco and AHAC had alleged that Wallace and its surety, Victore, breached their duties under the payment bond which was issued to insure payment of Wallace's suppliers. When Wallace stopped work and, along with Victore, failed to pay those suppliers, Flintco and AHAC did so and sought to recover the sums that they had paid to Wallace's suppliers on behalf of Wallace and Victore.

A.    <u>Standard of Review</u>

Again, Flintco and AHAC are claimants and, in order to preserve their right to file a Rule 50(b) renewed motion for judgment as a matter of law, were required to have filed a Rule 50(a) motion for judgment as a matter of law before submission of the case to the jury. They did not do so, and therefore the plain error standard of review applies. Likewise, the trial court could grant Flintco's motion for judgment as a matter of law only if it found plain error in the jury verdict. <u>Sims' Crane</u>, 800 F.2d at 1557 ("A lawyer who never moves for directed verdict, given the wording of Rule 50(b) and the clear case law regarding the effect

of such a decision--regardless of the reasons for such a decision, must realize that a subsequent motion for jnov can be granted only if plain error can be proven."). In the absence of plain error, the trial court could not consider Flintco's Rule 50(b) motion. Purcell v. Sequin State Bank & Trust Co., 999 F.2d 950, 956-57 (5th Cir. 1993); McCann, 984 F.2d at 670-73. Accordingly, we review the trial court's ruling on Flintco's and AHAC's payment bond claim to determine whether that ruling was required to cure plain error in the jury verdict.

B.   Discussion

The jury findings on Flintco's and AHAC's payment bond claim were as follows:

QUESTION NO. 15:

Did Flintco acquire from Wallace Construction Company's project creditors claims against Victore Insurance Company?

ANSWER:        No.
          (Yes or No)

QUESTION NO. 16:

Do you find from a preponderance of the evidence that Wallace and Victore breached their obligations to Flintco under the payment bond issued by Victore?

ANSWER:        No.
          (Yes or No)

QUESTION NO. 17:

What amount of money, if paid now in cash, would fairly and reasonably compensate Flintco for its damages proximately caused by Wallace's and Victore's breach of the payment bond, if any?

ANSWER: $  None

R. Vol. 11 at 3071-3073.   In disregarding the foregoing jury findings on the payment bond claim, the trial court wrote in its "Order Partially Disregarding Jury Verdict":

35

Flintco and AHAC reurge their arguments contained in their August 25, 1995 Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment, which addressed whether Victore breached its Miller Act payment bond. The Court denied this motion before trial, on November 2, 1995, in order to allow the parties to more fully uncover and develop the facts relating to this claim. At trial, Flintco proved by a substantial preponderance of the evidence and as a matter of law that it was entitled to recover sums justly due from Victore, Wallace's bonding company, for breach of its Miller Act payment bond when Wallace failed to pay its materialmen and suppliers. Under the terms of the payment bond, it was undisputed that Flintco needed only show, and did show, that Wallace was supposed to, but did not pay the five materialmen and suppliers in question in full within ninety days after Wallace abandoned the Project. The evidence was that Flintco stepped in and paid five of Wallace's materialmen and suppliers a total of $101,187.30 in claims unpaid by Wallace, Victore's principal. In exchange for paying Wallace's unpaid bills, Flintco received an assignment from each creditor of all their claims against Wallace and Victore. In other words, Wallace defaulted to its creditors and Flintco paid the claims itself. Instead of reimbursing Flintco for Wallace's bills which Flintco paid per the terms of the payment bond, Victore refused to recognize its liability to Wallace's creditors and their assignee.

R. Vol. 13 at 3665-3666 (footnotes omitted). The trial court's statement of the evidence is accurate, and a review of the trial record reflects nothing to controvert the overwhelming evidence in support of Flintco's and AHAC's payment bond claim. Because there is no evidence to support the jury's verdict on Question Nos. 15-17, the jury's findings on those questions constitute plain error.

The assignability arguments advanced by Victore as to why it should not be held liable on the payment bond claim were also thoroughly and correctly addressed by the trial court in connection with its grant of judgment as a matter of law to Flintco and AHAC

on their payment bond claim.[11]  Wallace and Victore argue that the

_____

[11] On Victore's assignability issues, the trial court correctly reasoned and concluded:

Victore paradoxically argued that (1) the assignment did not cover claims against Victore since Victore was not mentioned by name; and (2) the assignment released Victore even though it was not mentioned by name. Victore's first contention, that Flintco did not acquire any claims against it from Wallace's unpaid suppliers but only acquired claims against Wallace, is legally incorrect.  Flintco acquired claims from the creditors it paid against Victore and Wallace, even though not specifically mentioned, because Victore's obligations were co-extensive with those of Wallace.  This point seems too obvious to merit comment since construction financiers routinely rely upon assignments naming contractors only, and since Victore's unsupported legal contention/objection is wholly impracticable. Accordingly, since the assignments of claims against Wallace transferred to Flintco the derivative right to pursue payment under Victore's payment bond, Victore's first contention fails.

Victore's second contention, that Wallace's unpaid suppliers' assignment to Flintco released Victore even though it was not mentioned by name, is equally incorrect.  According to Victore, the provision in the assignment that releases Flintco "and any other party(ies) or surety(ies) from which Claimant might seek payment for materials and/or labor supplied to Wallace . . . " operates to excuse Victore from paying anyone, whether as original obligee or assignee.  Texas law, however, adheres to the "unity of release" rule which considers a party released "only if the release refers to him by name or with such descriptive particularity that **his identity or connection with the tortious event** cannot be doubted." <u>Randall v. Dallas Power & Light Co.</u>, 745 S.W.2d 397, 401 (Tex. App.--Dallas 1987), <u>rev'd on other grounds</u>, 752 S.W.2d 4 (Tex. 1988) (emphasis in original) (citing <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414 (Tex. 1984).  Under this rule, "[t]he reference in a release to 'all other persons, firms, or corporations liable, or who might be claimed to be liable, does not supply the descriptive particularity necessary to specifically identify an otherwise unnamed or unidentified tortfeasor." <u>Banowsky v. State Farm Mut.</u>

37

amounts Flintco paid to Wallace's materialmen and suppliers were offset by the jury in assessing Wallace's Miller Act and quantum meruit damages. This argument is also without merit. The jury instructions did not ask for or require any such offset, and this Court cannot impute to the jury's answers to Question Nos. 15, 16, and 17, a conjectural explanation for answers which on their face have no support in the evidence and that are plainly in error. Moreover, the jury specifically was instructed not to "increase or reduce the amount of damages, if any, in one question because of the instructions regarding or your answers to any other questions about damages, and do not speculate about what a party's ultimate recovery may or may not be." R. Vol. 11 at 3066. We presume that the jury followed these instructions.

Because there is no evidence to support the jury verdict on Question Nos. 15, 16, and 17, the verdict on Flintco's and AHAC's payment bond claim was plain error that affected substantial rights and required correction when the judgment was entered. The trial court cured that plain error with its grant of judgment to Flintco and AHAC on their payment bond claim, and its judgment on this point is upheld under the plain error standard of review.

Auto. Ins. Co., 876 S.W.2d 509, 513 (Tex. App.--Amarillo 1994, no writ) (citing Duncan, 665 S.W.2d at 419-20). Since the language now relied upon by Victore is virtually identical to that rejected by the court in Banowsky, it is clear that Victore is not "released."

R. Vol. 13 at 3666-3668 (footnotes omitted).

IV.  Attorney's Fees and Costs

Finally, Wallace argues that the trial court abused its discretion by awarding attorney's fees and costs to Flintco.  In its Amended Judgment the district court awarded to each side a recovery from the other side of the full amount of its attorney's fees and costs, without any segregation by the parties of the portions of their attorney's fees and costs that were attributable to the issues upon which they had prevailed.  According to Wallace, because Flintco and AHAC prevailed only on the payment bond claim, Flintco should not have been awarded attorney's fees or costs.  Wallace maintains that the district court at the very least erred in failing to segregate and to limit the awards of attorney's fees and costs only to those incurred on the payment bond claim upon which Flintco and AHAC prevailed.        Under Texas law, when a case involves more than one claim, ordinarily attorney's fees can be awarded only for necessary legal expenses incurred in connection with the claims upon which the recovery of fees is authorized.  Bank One, Texas, N.A. v. Taylor, 970 F.2d 16, 35 (5th Cir. 1992), *cert. denied*, 508 U.S. 906, 113 S. Ct. 2331 (1993).  Wallace, however, did not object at any time to Flintco's failure to segregate its requested attorney's fees or to the award of attorney's fees to Flintco.  This Court generally refuses to consider issues not raised below unless the issue presents a pure question of law or an issue which, if ignored, would result in a

40

miscarriage of justice.  <u>Deshotels v. SHRM Catering Servs., Inc.</u>, 842 F.2d 116, 120 (5th Cir. 1988) (citing <u>Volkswagen of America, Inc. v. Robertson</u>, 713 F.2d 1151, 1166 (5th Cir. 1983)).  Likewise, a new argument raised for the first time on appeal, even if it concerns an issue considered by the trial court, will not be addressed unless it meets the plain error standard.  <u>Forbush v. J.C. Penney Co.</u>, 98 F.3d 817, 822 (5th Cir. 1996) (new argument on appeal regarding award of attorney's fees rejected as not meeting plain error standard).  The rule applicable here, as regards Wallace's complaint on appeal about the award of attorney's fees to Flintco and AHAC,  is as it was stated in <u>Powell v. Old Southern Life Ins. Co.</u>, 780 F.2d 1265, 1268 (5th Cir. 1986):

> [N]o issue concerning the amount of fees due or the method of calculating the award was raised in the district court, and we do not consider issues not raised below unless they present a pure question of law or a refusal to do so would "result in a miscarriage of justice."

(quoting <u>Volkswagen of America, Inc.</u>, 713 F.2d at 1166).  Flintco and AHAC prevailed on a portion of the litigation and, in particular, upon their successful motion for judgment as a matter of law notwithstanding an adverse jury verdict on Flintco's and AHAC's payment bond claim.  Upon this record, and given Wallace's waiver of the fee segregation issue in the trial court, we affirm the district court's determination on attorney's fees.

41

Wallace did object in the trial court that Flintco and AHAC were not entitled to recover costs because the costs sought by them were not incurred in connection with the claim upon which Flintco and AHAC were successful.[12] Wallace especially complained that $40,415 of the $73,778 in costs awarded to Flintco and AHAC were for expert witness fees although Flintco's and AHAC's expert did not testify regarding the payment bond claim on which Flintco and AHAC prevailed. In this appeal Wallace argues that the trial court's award of $73,778.43 in costs to Flintco and AHAC, including $40,415.68 for fees for an expert witness who offered no evidence on the one claim on which Flintco and AHAC prevailed, constitutes an abuse of discretion. Flintco and AHAC argue that the award was within the trial court's broad discretion, but also point out that of the $90,091 in costs awarded to Wallace, $76,610 was for his expert's fees.

_____

[12] In his Motion for Entry of Judgment based on the Jury Verdict, Wallace requested attorney's fees and costs. Flintco, in its Motion for Judgment Notwithstanding the Verdict, also requested attorney's fees and costs. Flintco did not oppose Wallace's request to recover his attorney's fees and costs and, remarkably enough, Wallace did not argue against Flintco's request to recover its attorney's fees and costs. In the Order Partially Disregarding the Jury Verdict, the district court awarded costs of $71,546.50 to Flintco and AHAC, and $90,091.00 in costs to Wallace. In his Motion to Alter and Amend, Wallace argued that it was error to award costs to Flintco and AHAC when the costs incurred by them were not related to the one claim (the payment bond claim) upon which they ultimately prevailed. Flintco did not object in the trial court to the costs awarded to Wallace. Despite Wallace's costs argument, the Amended Judgment included cross-awards of costs to Flintco and AHAC in the total sum of $73,778.43 and to Wallace in the total sum of $90,091.00.

42

As set forth above, Flintco and AHAC prevailed only on the payment bond claim, and Flintco and AHAC incurred no expert witness fees in prosecuting that claim. We agree that the trial court abused its discretion when it included $40,415.68 in expert witness fees as part of the costs that it awarded to Flintco and AHAC.[13]

Wallace's complaint on this point, however, requires us to observe a more fundamental error of law, namely, that the cross-awards of costs include amounts for expert witness fees in excess of the amounts allowed by 28 U.S.C. § 1821. Flintco and AHAC claimed and were awarded expert witness fees in the sum of $40,415 and Wallace and Victore claimed and were awarded expert witness fees in the sum of $76,610. Both sides sought recoveries of those expert witness fees in the trial court by relying upon Copper Liquor Inc. v. Adolph Coors, Co., 684 F.2d 1087, 1100 (5th Cir. 1982), which had held that expert witness fees in excess of that provided for by 28 U.S.C. § 1821 may be awarded in "exceptional circumstances" such as when the "expert testimony was necessary or helpful to a presentation of civil rights claims, or indispensable to the determination of the case." That holding of Copper Liquor was directly overruled by International Woodworkers of Am. v.

---

[13] Such an award may be viewed as impermissibly shifting the costs incurred by Flintco and AHAC on claims on which they did not prevail to Wallace and AHAC. *See* Hall v. State Farm Fire & Cas. Co., 937 F.2d 210, 216 (5th Cir. 1991)("A trial court has wide discretion with regard to the costs in a case and may order each party to bear his own costs. The judge cannot, however, order the prevailing party to share, or shoulder all of, the costs of a nonprevailing party unless the costs serve as a sanction.").

<u>Champion Int'l Corp.</u>, 790 F.2d 1174, 1175-76 (5th Cir. 1986) (en banc), *aff'd sub nom* <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 107 S. Ct. 2494 (1987). In <u>International Woodworkers</u>, this Circuit held that "the fees of non-court-appointed expert witnesses are taxable by federal courts in non-diversity cases only in the amount specified by § 1821, except that fees in excess of that amount may be taxed when expressly authorized by Congress, or when one of the three narrow equitable exceptions recognized by *Alyeska* applies." <u>Id.</u> at 1181. None of the <u>Alyeska</u> exceptions[14] applies to this case.

Because expert witness fees in excess of those provided for by 28 U.S.C. § 1821 may not be awarded as costs in a nondiversity case such as this, <u>International Woodworkers</u>, 790 F.2d at 1175, and because neither side in this dispute limited its claims for costs to those amounts allowed by § 1821, the cross-awards of costs in this case constitute plain error.

---

[14] Costs in excess of that allowed by § 1821 may be awarded under the exceptions announced in <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 95 S. Ct. 1612 (1975) when:

> (1) the trustee of a fund or property, or a party in interest, preserved or recovered the fund for the benefit of others in addition to himself;
>
> (2) a party acted in wilful disobedience of a court order; or
>
> (3) the losing party had acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

<u>International Woodworkers</u>, 790 F.2d at 1177.

44

To reverse Flintco's and AHAC's erroneous recovery of $40,415 in expert witness fees but to leave standing Wallace's erroneous recovery of $76,610 in expert witness fees would amount to a manifest miscarriage of justice. Moreover, since the district court must reconsider the taxation of costs on remand, in a case such as this -- where each party has prevailed on a portion of the case -- the district court should have before it the entire costs issue. Otherwise, the district court would effectively be deprived of its broad discretion to consider the total costs that are properly taxable and the competing arguments of the parties as to how those costs should be fairly borne. Because the cross-awards of taxable costs that were adjudged here are both unusual and intertwined, and because the awards are infected with erroneous inclusions of expert witness fees in excess of what is permitted under § 1821, we conclude that a manifest miscarriage of justice can be avoided on this issue only by setting aside the cross-awards of costs and remanding the costs issue for further proceedings by the district court.

## Conclusion

For the foregoing reasons, we REVERSE and VACATE those portions of the Amended Judgment that adjudge cross-recoveries of costs by Flintco and AHAC from Wallace and Victore, and by Wallace from Flintco and AHAC, and we REMAND this case to the district court for further proceedings consistent with this opinion on the

45

taxation of costs; we REFORM the Amended Judgment to consolidate the two segments discussed above in footnote 3, as follows:

> It is ORDERED and ADJUDGED that Marshall E. Wallace, d/b/a Wallace Construction Company, shall recover from Flintco, Inc. and American Home Assurance Co., jointly and severally:
>
> 1. Actual damages in the amount of $197,777.00;
>
> 2. Pre-judgment interest thereon in the amount of $62,681.85;
>
> 3. Post-judgment interest on all amounts awarded in item numbers one and two above at the currently prevailing rate pursuant to 28 U.S.C. § 1961 of 5.90% per annum, compounded annually, from the date of this judgment until paid;

we REFORM all awards of post-judgment interest in the Amended Judgment to provide that post-judgment interest shall be compounded annually; and the Amended Judgment is otherwise AFFIRMED.