**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 19, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
for the FIFTH CIRCUIT

No. 06-40308

RONALD E. DUFF,

Plaintiff-Appellee,

VERSUS

WERNER ENTERPRISES, INC., d/b/a Nebraska Werner Enterprises, Inc.;
GLEN PATRICK PEER,

Defendants-Appellants.

Appeal from the United States District Court
For the Eastern District of Texas

Before GARWOOD, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

INTRODUCTION

Defendants-Appellants Werner Enterprises, Inc. and Glen P. Peer challenge the district court's

denial of their motion for new trial following a jury verdict rendered in favor of Plaintiff-Appellee

Ronald E. Duff. The jury awarded Duff $300,000 for past and future damages after finding that

Peer's negligent driving was the sole proximate cause of a car accident between Peer and Duff. The

issue on appeal is whether adequate evidence supports the jury's negligence finding and award.

## FACTUAL BACKGROUND

Duff is a Texas Ranger law enforcement officer. As such, he drives an unmarked car, provides support and backup to various Texas law enforcement agencies, and is on call twenty-four hours a day. Peer is a tractor trailer operator. And Werner Enterprises, Inc. ("Werner"), Peer's employer at the time of the accident, is the commercial transportation company that owned the truck involved in the accident.

On March 17, 2004, Duff responded to a request that he assist in a manhunt for three fugitives last seen in Woodville, Texas. The fugitives robbed a bank earlier that day, exchanged gunfire with a law enforcement official, and fled on foot. Duff left his home in an unmarked car and proceeded north on U.S. Highway 59 ("US 59").

As Duff approached Goodrich, Texas, Peer was waiting to pull his rig out of a truck stop parking lot located on the northbound side of US 59. Peer needed to cross multiple northbound lanes and the center median to turn left and head south on US 59. Although Peer allegedly checked to his left before pulling out, he for some reason did not see Duff's vehicle approaching. At trial, both parties introduced theories as to why Peer did not see Duff. The pervasive theme on Duff's side (which was supported by the written report filed by the accident investigator) was that Peer's view of Duff's car was blocked by a truck in front of Duff's car turning right to enter the parking lot Peer was trying to exit. Whatever the reason, Peer did not see Duff's car and pulled his rig out directly in front of it.

When Duff first applied his brakes, he was traveling 93-100 miles per hour and was on his cell phone discussing the fugitive situation. Duff was unable to avoid Peer's rig and collided with the left rear of the rig's trailer. Unable to feel the impact, Peer continued his attempt to make the left turn,

2

dragging Duff's car sideways across the northbound lanes of US 59.

The collision nearly removed the entire top half of Duff's car. Duff suffered fairly serious injuries, but for the most part has recovered. Duff's remaining injury is a fractured C7 cervical vertebra, which causes him pain and decreased mobility. His doctor recommends a cervical fusion to fix it. But, because the surgery will require Duff to miss up to four months of work, he has not yet had it.

PROCEDURAL HISTORY

Duff filed this lawsuit alleging that Peer's driving was negligent and the proximate cause of his injuries. Duff also claimed that because Peer was acting within the scope of his employment at the time of the accident, Werner was vicariously liable.

The case went to trial, and the jury agreed with Duff. The jury found that Peer's actions were negligent and the sole proximate cause of the accident. Therefore, the jury necessarily found that Duff's actions either were not negligent, not a proximate cause of the accident, or both. Because the verdict form combined negligence and causation into one question, it is not now clear which of the above scenarios the jury chose. The jury awarded Duff $300,000 for past and future damages. Of the $300,000, the verdict form indicated that the jury awarded Duff $80,000 for future medical care and $35,000 for future loss of earning capacity.

In a motion for new trial, Appellants contended that the jury's verdict was against the great weight of the evidence. Specifically, Appellants insisted that the evidence required a finding that Duff was at fault and additionally that the evidence supported an award no greater than $40,000 and $17,000 respectively for future medical care and future loss of earning capacity. The district court denied the motion, and this appeal followed.

3

DISCUSSION

Appellants make the same arguments on appeal, i.e., that the trial court abused its discretion by denying their motion for new trial because the following portions of the jury's verdict were against the great weight of the evidence: (1) the jury's negligence finding; (2) the jury's award for future medical care; and (3) the jury's award for future loss of earning capacity. We will address each in turn, keeping in mind our deferential standard of review: "Absent 'a clear showing of an abuse of discretion,' we will not reverse the trial court's decision to deny a new trial." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998) (quoting *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1261 (5th Cir. 1986) . To make such a "clear showing," Appellants must demonstrate "an absolute absence of evidence to support the jury's verdict." *See id.*

We start with the jury's negligence finding.

(1) The Jury's Negligence Finding

Appellants take issue with the jury's refusal to place any blame for the accident on Duff. The verdict form required the jury to analyze negligence and proximate cause individually as to both Peer and Duff. The jury determined that Peer was negligent and that his negligence was the sole proximate cause of Duff's injuries. Therefore, the jury necessarily determined either that Duff was not negligent or that his actions did not proximately cause his injuries, or both.

Appellants contend that the evidence *required* a finding that Duff was negligent. Therefore, Appellants continue, the jury's finding to the contrary was against the great weight of the evidence, and the district court's refusal to grant Appellants a new trial was an abuse of discretion. Appellants point to the following facts: Duff was traveling 93-100 miles per hour in a 65 miles per hour zone. This was far too fast, according to Appellants, because it was nighttime and the area was fairly busy

4

(because there were gas stations, parking lots, and restaurants nearby). Additionally, Duff was in an unmarked car without flashing lights or a siren and was on his cell phone at the time of the accident. Finally, Trooper Shel Lee testified at trial that, in her opinion, Duff was going too fast.

Duff counters with facts that support the jury's finding that Peer's negligence was the sole proximate cause of the accident. Like Appellants, Duff points to numerous facts to support his theory. To decide this issue, however, we need look no further than the first fact Duff cites. Trooper Lee's report, written immediately after she investigated the accident, reads:

> Based on physical evidence left at the scene and witness statements, it is my opinion that [Peer] failed to yield the right-of-way to oncoming traffic. [Peer] could not possibly have had a sure clear view of approaching traffic hazards, due to Ranger Duff's vehicle being blocked from his view by another truck-tractor turning into the parking lot [that Peer was exiting] . . . . It is my opinion that [Peer] did not wait for a visual obstruction to clear prior to pulling across the roadway into the path of oncoming traffic.

We can stop there. While the evidence does not exclusively support the jury's negligence finding, it need not. Again, our well-established standard of review in this context requires us to affirm "unless there is *a clear showing* of an *absolute absence of evidence* to support the jury's verdict." *See id.* (emphasis added). The written report of the investigating officer points the finger at Peer, and it alone precludes us from finding "a clear showing of an absolute absence of evidence" supporting the jury's verdict as it relates to negligence. Thus, we affirm this portion of the district court's denial of Appellants' motion for new trial.

We turn now to both aspects of the jury's award for Duff's future damages.

(2) The Jury's Award for Future Medical Care

Appellants argue that the jury improperly overcompensated Duff for future medical care. As noted above, the jury awarded Duff $80,000 for future medical care. Generally, we will disturb a jury

award only upon a clear showing of excessiveness. *See Carlton v. H. C. Price Co.*, 640 F.2d 573, 578 (5th Cir. 1981). And it is well settled that an award is excessive if it exceeds the "maximum amount calculable from the evidence." *See id.* at 579. We view this standard, at least in this context, as substantially the same as our deferential review of a district court's denial of a motion for new trial brought on the ground that the verdict is against the great weight of the evidence; that is, we affirm unless there is a clear showing of an absolute absence of evidence to support the jury's verdict. *See Hidden Oaks Ltd.*, 138 F.3d at 1049. Thus, we will determine the maximum amount calculable from the evidence submitted at trial to ensure the jury did not exceed it.

To start, Appellants concede that the evidence adequately supports an award of $40,000 for future medical care. Indeed, Duff's doctor testified (via video deposition) that Duff needs surgery on his C7 vertebra, and that the total cost of the surgery will be about $40,000. However, Appellants argue that *no evidence* supports an award for future medical care greater than $40,000.

Duff, on the other hand, contends that the evidence clearly supports the $80,000 award. First, Duff reaffirms, $40,000 is not in dispute. So the only question before us is whether the evidence supports an additional $40,000. Duff insists that the additional $40,000 is supported by evidence of costs associated with: preparation for his surgery, his next round of steroid injections, future check-up visits, and medication he probably will need to take in the future. After our painstaking review of the record, we find that it supports much, but not all, of the $80,000 awarded for future medical care.

Here is our review of the record and a corresponding calculation: First, it is now undisputed that Duff is entitled to $40,000 for the surgery.

Second, Duff introduced evidence establishing that before he has the surgery he first will need preparatory care and testing, including an MRI and myelography. Duff gave the jury past medical bills

6

establishing that an MRI costs $935 and a myelography costs $545. Duff does not expand on any additional care he might need to get ready for surgery. This additional $1480 brings the total to $41,480.

Third, Duff explained to the jury that he needs and has scheduled, but not yet received or paid for, his next round of steroid injections. He entered into evidence a medical bill indicating that a prior round of injections cost $5,673, bringing the calculable amount thus far to $47,153.

Fourth, Duff's doctor testified that Duff needs quarterly check-up visits. Appellants offered no evidence contradicting Duff's doctor's assertion that Duff requires check-ups. The record shows, through medical bills documenting Duff's 2004-2005 check-ups, that the average cost per visit is $143.71. Thus, at four per year, the check-ups will cost Duff $574.84 each year. To add meaning to this yearly cost, Duff established at trial that his life expectancy is 37 years. The total cost of the office visits over Duff's lifetime, therefore, is $21,269.08. This brings the calculable amount to $68,422.08. But that is as far as the record will go for Duff.

The rest of Duff's evidence relating to future medical care is too vague for us, or a jury, to consider. For example, the record contains a written statement by Duff's doctor implying that Duff will need to take medication in the future. More specifically, but not specifically enough, Duff's doctor stated that Duff would need "intermittent medication therapy." No further explanation was given. The jury did receive evidence of the cost of different types of medication, both prescription and nonprescription. Unfortunately for Duff, he did not explain to the jury or offer evidence indicating how many or which types of medication Duff will need, how often Duff will need to fill prescriptions, and for how long Duff will need to take medication. Without this information, the jury could not have used properly the evidence of the cost of various forms of medication.

In sum, the maximum amount calculable for future medical care is $68,422.08. Therefore, a remittitur of the future medical care portion of Duff's award to $68,422.08 will be required unless he elects a new trial on these damages.

We must now analyze in the same fashion the jury's award for future loss of earning capacity.

(3) <u>The Jury's Award for Future Loss of Earning Capacity</u>

Appellants contend that the jury also improperly overcompensated Duff for future loss of earning capacity. Appellants insist that the record contains only one piece of evidence relating to Duff's future loss of earing capacity--evidence that when Duff has surgery to repair his fractured C7 cervical vertebra, he will miss up to 17 weeks of work. The record makes clear that Duff currently makes $1,000 per week, and Duff did not argue or offer evidence that he will be promoted or receive raises in the future. Thus, Appellants contend that the record supports an award no greater than $17,000.

We agree. Quite simply, the jury had no evidence before it to conclude that Duff deserved more than $17,000 for future loss of earning capacity. The only evidence before the jury was that Duff could miss up to 17 weeks of work and that he makes $1,000 per week. Any amount greater than $17,000, therefore, exceeds the maximum amount calculable from the evidence. A remittitur of the future loss of earning capacity portion of Duff's award to $17,000 will be required unless he elects a new trial on these damages.

In all, $29,577.92 of Duff's $300,000 award is not sustainable on this record.

CONCLUSION

8

For the foregoing reasons, we AFFIRM the district court's denial of Appellants' motion for new trial as it relates to the jury's negligence finding. We REMAND, however, for further proceedings consistent with this opinion. Specifically, the district court must remit Duff's award to $270,422.08 unless he elects a new trial on damages stemming from future medical care and future loss of earning capacity.

**AFFIRMED in part, and REMANDED with instructions.**