# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2010

Lyle W. Cayce
Clerk

No. 09-30547

LOUIS ADAMS; MICHELLE ADAMS,

Plaintiffs-Appellants-Cross-Appellees,

versus

CHEVRON USA, INC.,

Defendant-Appellee-Cross-Appellant,

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-3591

Before JOLLY, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Louis and Michelle Adams appeal a judgment following a jury trial award-
ing them damages for an injury Louis sustained.  They challenge the allocation

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-30547

of fault, the award of general damages, the exclusion of evidence, and opposing counsel's comments during closing arguments. Chevron cross-appeals, arguing that it owed no legal duty to Louis. We affirm in all respects.

I.

Louis, an employee of Fluor/Plant Performance Services ("P2S"), was injured while working on an offshore platform owned by Chevron. He was required to run tubing though an overhead space in the standby generator room, but he was unable to use a ladder to access that space, because a two-tier battery stand was in the way. He decided to climb onto the battery stand to reach the overhead space, but as he climbed down, the bottom tier gave way, and he twisted his knee, requiring several surgeries.

Louis and his wife, Michelle, sued Chevron under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.*, which directs that Louisiana tort law applies. The jury apportioned fault as follows: Chevron 10%; Louis 60%; and P2S 30%. It awarded Louis $591,000 in damages, including $85,000 in general damages for pain and suffering, and awarded Michelle $20,000 for loss of consortium, but reduced those awards by 90% in accordance with Louisiana's comparative fault scheme.

The Adamses filed a post-verdict motion for judgment as a matter of law ("j.m.l.") and alternative motion for new trial, challenging the apportionment of fault, the general damages award, and opposing counsel's comments during closing argument. Chevron filed a cross-motion for j.m.l., arguing that it did not owe Louis any legal duty. The district court denied both motions and entered judgment in accordance with the verdict.

II.

We review the denial of a motion for j.m.l. *de novo*, using the same stan-

2

dard the district court used. *Ford v. Cimarron*, 230 F.3d 828, 830 (5th Cir. 2000). "Judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.'" *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997) (quoting FED. R. CIV. P. 50(a)). When evaluating the denial of j.m.l., we must consider all the evidence in the light most favorable to the non-movant while "leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury." *Foreman*, 117 F.3d at 804 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253-55 (1986)).

Review of the denial of a motion for new trial is "more deferential than our review of the denial of a motion for [j.m.l.]." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998). We must affirm the district court's denial of a motion for new trial absent a "clear showing of an abuse of discretion." *Id*. A "clear showing" requires that the appellant demonstrate "an absolute absence of evidence to support the jury's verdict." *Duff v. Werner Enters. Inc.*, 489 F.3d 727, 729 (5th Cir. 2007) (citations omitted). We also apply an abuse-of-discretion standard to evidentiary rulings. *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005).

Where an error is not contemporaneously objected to at trial, however, we review only for plain error. *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003). To meet that more stringent standard, a party must demonstrate that (1) there was error, defined as a deviation from a legal rule; (2) it was plain, defined as obvious; and (3) it affected his substantial rights, defined as prejudicially affecting the outcome of the trial. *Id*. Reversible plain error is that which seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.

No. 09-30547

III.

On appeal, the Adamses raise four issues. We address each in turn.

A.

The Adamses claim that the evidence does not support the jury's allocation of fault.[1] They assert that there was no proof that Louis violated any safety rules, no showing that P2S was negligent, and extensive testimony indicating that Chevron's negligence was the primary cause of the accident. We find ample evidence in the record to support the jury's determination.

First, trial testimony supported a finding that Louis was 60% at fault. Timothy Gaspard, Louis's supervisor on the platform, stated that Louis's use of the battery stand as a step ladder violated several of P2S's safety rules. Gaspard also explained that Louis changed the established work plan without authority and without going through the proper procedures. Dale Ellerbe, a Chevron mechanic, testified that the plywood insert on the lower tier of the battery stand was "rotten looking" before the accident. Louis acknowledged that he noticed discoloration on the lower tier but did not perform any further inspection before stepping on it.

The evidence also supported a finding that P2S was 30% at fault for Louis's injury. Gaspard's testimony showed that P2S violated several of its own safety rules and procedures, including the rule requiring Louis's supervisor to address Louis's project in the safety meeting before the accident.

Finally, contrary to the Adamses' contention, the evidence did not over-

---

[1] It is not entirely evident whether the Adamses challenge the denial of j.m.l., which is ordinarily reviewed *de novo*, or the denial of their alternative motion for new trial, which is customarily reviewed for abuse of discretion. Furthermore, the parties dispute whether the Adamses' pre-verdict motion for j.m.l. was sufficient to preserve their post-verdict renewed motion. We need not resolve either question, because both challenges fail even under the least deferential standard of review.

No. 09-30547

whelmingly show that Chevron's fault was the primary cause of the accident. Although the jury found that Chevron was negligent in maintaining the platform, it reasonably concluded that Louis's and P2S's carelessness, including various safety-rule violations, accounted for the lion's share of fault.

The Adamses have failed to demonstrate that the jury's allocation of fault lacked evidentiary support. The district court therefore did not err in denying their post-verdict motion for j.m.l. and alternative request for a new trial.

B.

The Adamses claim that the district court erred in denying their motion for a new trial, because the jury's $85,000 award of general damages for pain and suffering was excessively low and inconsistent with the verdict.[2] We find no error.

"[D]amage awards will only be overturned in exceptional cases where such awards are so gross as to be contrary to right reason." *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 331 (5th Cir. 1987). The Adamses first claim that the $85,000 general damages award is inconsistent with the jury's determination that Louis was entitled to $62,000 in past medical expenses. But there is no necessary connection between the expense of past medical procedures and the pain and suffering associated with them.

The Adamses also assert that Louis's suffering entitles him to at least $250,000 in general damages. That assertion is conclusory and entirely unsupported by legal or factual argument. In short, there is nothing in the record to suggest that the $85,000 award for pain and suffering is so inadequate as to be

---

[2] Although it is uncertain, from the Adamses' brief, whether they are asking this court to award a higher amount of damages as a matter of law, such an award would constitute an *additur*, which is prohibited under the Seventh Amendment. *See Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 985 (5th Cir. 1989) (citing *Dimick v. Schiedt*, 293 U.S. 474 (1935)). We therefore construe the brief to request only a new trial based on inadequate damages.

"contrary to right reason."  Therefore, the district court did not err in denying a new trial.

C.

The Adamses argue that copies of Chevron's work order slips for converting the battery stand into a step should not have been excluded as evidence of subsequent remedial measures.  Again, we find no error.

The admissibility of evidence of subsequent remedial measures is governed by Federal Rule of Evidence 407, which states:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

FED. R. EVID. 407.  The Advisory Committee Notes explain that the primary justification for rule 407 is the "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." FED. R. EVID. 407, Advisory Committee Note (1972).  The rule also seeks to ensure that negligence is properly determined "according to what the defendant knew or should have known *prior to the accident*, not what the defendant knew as a result of the accident."[3]

The Adamses claim that the purpose of seeking to introduce the slips was not to prove negligence, but to establish that (1) Chevron owned the battery stand; (2) Chevron had control over the maintenance of the stand; and (3) it was

---

[3] 2 STEPHEN A. SALZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 407.02[3], at 407-6 (9th ed. 2006).

No. 09-30547

feasible to replace the wooden inserts with a more sturdy type of material.[4] Although those claims track rule 407's list of permissible purposes for introducing evidence of subsequent measures, none of those issues was "controverted" at trial. Chevron never maintained that it did not own the battery stand, that it did not have control over the maintenance of the stand, or that it was not feasible to replace the wooden inserts in the stand with a more durable material. Therefore, the district court properly excluded the work order slips.

## D.

The Adamses claim that Chevron's counsel made impermissible comments, during closing argument, that tainted the verdict. They contend that defense counsel attempted to mislead the jury by suggesting it was not "feasible" to access the radiator from the battery stand and that "common sense" should have told Louis that the battery stand was not a step.

There was no objection to those statements at trial, so we review only for plain error.[5] To begin with, the challenged comments offered an entirely appropriate account of Chevron's position regarding the trial evidence. There is nothing objectionable or inflammatory about the suggestion that it was not "feasible" to use the battery stand to access the radiator or that the jury should employ its "common sense." But even assuming *arguendo* that those comments were improper, and obviously so, they did not affect the Adamses' substantial rights. There is no reasonable probability that two fleeting comments, cherry-picked out of context from a transcript well over 1000 pages, had any effect on the jury.

---

[4] In addition to those three claims, the Adamses argue that they sought to introduce the slips to prove that it was feasible for the battery stand to give access to the radiator. Although that claim of "feasibility" was controverted, it was not a claim about the feasibility of a *precautionary measure* and therefore does not qualify under rule 407's feasibility exception.

[5] *See Gallardo-Trapero*, 185 F.3d at 321. The Adamses' brief concedes that our review is limited to plain error.

No. 09-30547

IV.

In its cross-appeal, Chevron argues that it owed Louis no legal duty, be-cause (1) the dangerous condition was open and obvious; (2) Louis's actions were not foreseeable; and (3) P2S was an independent contractor.[6] We address Chev-ron's claims in that order.

A.

Chevron argues that it owed no duty to Louis, because the rotten appear-ance of the battery stand was "open and obvious." We disagree.

To determine whether a defendant is liable for negligence, Louisiana courts have adopted a "duty-risk" analysis. *See Hill v. Lundin & Assocs., Inc.*, 256 So. 2d 620 (La. 1972). Under that analysis, the court asks the following questions:

(1)  Was the conduct in question a cause-in-fact of the resulting harm?

(2)  What, if any, duties were owed by the respective parties?

(3)  Were the requisite duties breached?

(4)  Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Socorro v. City of New Orleans*, 579 So. 2d 931, 938-39 (La. 1991). If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable. *Pitre v. La. Tech Univ.*, 673 So. 2d 585, 590 (La. 1996).

Landowners owe invitees a duty to discover any unreasonably dangerous condition and either to correct the condition or to warn of its existence. *Socorro*, 579 So.2d at 939. In Louisiana, whether a defendant owes a duty to a plaintiff

---

[6] Chevron argues that it had no duty to provide P2S's employees with a safe place to work and that it had no duty to its independent contractor's employees. Chevron presents those claims as separate, but they are identical defenses against vicarious liability for P2S's conduct. Therefore, we address those arguments together.

is a question of law, and "[i]t is the court's obligation to decide which risks are unreasonable, based on the facts and circumstances of each case." *Pitre*, 673 So. 2d at 590. In determining whether a particular risk is unreasonable, a court must balance "the intended benefit of the thing with its potential for harm and the cost of prevention." *Id.*. "[T]he obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis." *Id.* at 591.

Chevron argues that the district court erred in denying its motion for j.m.l., because Louis admitted that he saw discoloration on the wood inserts on the lower tier of the battery stand. But the fact that he noticed discoloration does not prove that the dangerous condition was so "open and obvious" as to negate any legal duty. For the "open and obvious" doctrine to affect the liability calculus, both the condition *and the risk of danger* must be apparent.[7] Although it may have been plain that the first tier of the battery stand was discolored, Chevron has not shown that the stand created an obviously dangerous condition.

Moreover, whether a condition is "open and obvious" is only one factor in determining the scope of a defendant's duty to a particular plaintiff. *See Pitre*, 673 So. 2d at 591. If a condition is as obvious to a visitor as to the owner, that fact will ordinarily decrease the likelihood of harm in the reasonableness calculus. Obviousness, however, does not eliminate the need to consider the other reasonableness factors, such as the gravity of the resulting harm and the cost of prevention. For instance, Ellerbe testified that the repair could have been done quickly and at minimal cost. Even if we found, then, that the battery stand presented an obviously dangerous condition, Chevron gives us no reason to believe

---

[7] *See* RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965); s*ee also id.* at cmt.1(b) ("'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.").

that the district court improperly balanced the duty-risk factors. Therefore, the court did not err in denying j.m.l. on the ground that the dangerous condition was open and obvious.

## B.

Chevron argues that Louis's injury was not within the scope of its duty, because his use of the battery stand as a step was unforeseeable. We disagree.

"In some instances a risk may not be found within the scope of a duty where the circumstances of that particular injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty." *Todd v. State Through Dep't of Soc. Servs.*, 699 So. 2d 35, 39 (La. 1997). Chevron argues that the battery stand was obviously not intended to be used as a step and that there was no way to anticipate Louis's particular misuse of the stand.

Chevron has shown that the stand was not intended to be used as a step. First, the stand abutted a solid metal wall, which indicates it was not built to allow access to a different part of the platform. Furthermore, there was a lip at the base of the stand that also suggests its intended use was not as a step or a ladder.

The fact that Louis's use of the stand was not its intended use, however, does not answer the question whether his actions were unforeseeable. In fact, the evidence suggests that his particular "misuse" could have been anticipated. First, there was testimony that he had seen several Chevron employees using the stand as if it were a step ladder. Additionally, the stand appeared to be the easiest way to gain access to the overhead space, because it was immovable and precluded the proper placement of a ladder or scaffolding. Contrary to Chevron's claims, we find that Louis's use of the stand as a step, though not the intended use, was foreseeable. Therefore, the district court did not err in denying Chev-

No. 09-30547

ron's motion for j.m.l. on the ground that Louis's injury was unforeseeable.

C.

Chevron claims that it had no legal duty to Louis, because his employer, P2S, was an independent contractor. It argues that it is not liable for the unsafe work practices of its independent contractor over whom it did not exercise any operational control. The district court found that defense to be misguided, and we agree.

Chevron is essentially arguing that it should not be held vicariously liable for the negligent acts of its independent contractor. Chevron was not found liable, however, on a theory of vicarious or enterprise liability. Instead, it was found directly liable for its own negligence. Although P2S's status as an independent contractor insulates Chevron from vicarious liability for P2S's unsafe practices, that status does not preclude liability to Louis and his wife for Chevron's own negligent acts or omissions. Therefore, Chevron is not entitled to j.m.l. on its independent-contractor defense.

AFFIRMED.

11