# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60884

United States Court of Appeals
Fif h Circuit

**FILED**

March 15, 2017

Lyle W. Cayce
Clerk

KRISTAN SEIBERT,

      Plaintiff - Appellant

v.

JACKSON COUNTY, MISSISSIPPI; JAMES MICHAEL BYRD, "Mike"
Individually and in His Official Capacity as Sheriff of Jackson County,
Mississippi,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Kristan Seibert, a detective in the Jackson County, Mississippi, Sheriff's Department, brought this lawsuit against former Sheriff James Michael Byrd and Jackson County. She assert claims under Title VII of the Civil Rights Act and under Mississippi tort law, including claims for intentional infliction of emotional distress (IIED). A jury found that the defendants were not liable under Title VII; however, the jury returned a verdict in the amount of $260,000 against Byrd, in his individual capacity, on Seibert's IIED claim. After final judgment was entered on the jury verdict, Byrd filed a renewed motion for judgment as a matter of law (JMOL), arguing that Seibert had presented

insufficient evidence to support the IIED verdict. Seibert filed a motion for JMOL; in the alternative, she requested a new trial. The district court granted Byrd's motion and denied Seibert's motion. This appeal followed. Finding that the district court erred in "decoupling" the evidence when considering Byrd's motion for JMOL, we reverse the district court's judgment on that issue and remand for reinstatement of the jury's verdict and entry of judgment thereon. Finding no further error, we affirm the district court's judgment in all other respects.

I

In November 2008, Kristan Seibert was hired by the Jackson County Sheriff's Department as a patrolman, under the supervision and management of Sheriff James Michael Byrd. In May 2012, then-Sheriff Byrd promoted Seibert and transferred her to the Explorers, a public relations and youth outreach program. In this position, she had more contact with the sheriff. Seibert alleges that Byrd began sexually harassing her shortly after her transfer, subjecting her to "unwanted touching, lewd comments, and in general rude, unwelcome, and unwanted sexual advances toward her." Seibert described these incidents in detail and testified that because of Byrd's continued sexual harassment she felt "powerless." In November 2012, Byrd transferred Seibert to a different station on the west side of Jackson County. Seibert alleged that this transfer was retaliation for her refusal of his advances; Byrd testified that it was an accommodation made to help Seibert care for her sick child.

In August 2013, Seibert was called to testify before a Jackson County Grand Jury investigating Byrd, where she was questioned about his alleged sexual harassment. After the grand jury returned an indictment and information about the proceedings was released, Seibert alleges that Byrd came to her office and said, "I guess you hate me, too." Byrd resigned from

office in December 2013, after he pleaded guilty to a federal felony charge of knowingly engaging in misleading conduct toward another person with intent to prevent the communication to a federal law enforcement officer. Later that month, Seibert filed a Charge of Discrimination against Byrd and Jackson County with the Equal Employment Opportunity Commission, alleging discrimination based on sex and sexual harassment. She received a Notice of Right to Sue in January 2014. In April of the same year, Seibert filed suit in the United States District Court for the Southern District of Mississippi, bringing claims against Byrd, in his official and individual capacities, and Jackson County under 42 U.S.C. § 1983; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a); and Mississippi tort law.

Byrd and the County filed separate motions to dismiss in June 2014. The district court granted the motion as to Seibert's official-capacity § 1983 claims and denied it in all other respects; the district court denied the County's motion in its entirety. One year later, shortly before trial, Byrd and the County filed separate motions for summary judgment. The district court granted the motions in part and denied the motions in part. The court granted Byrd's motion as to any Title VII claim against him in his individual capacity, Seibert's retaliation and quid pro quo sexual harassment claims under Title VII, any purported state-law tort claim of sexual harassment, all claims for lost wages and lost earning capacity, and Seibert's claim for punitive damages under Title VII. The district court denied Byrd's motion as to Seibert's hostile work environment claim under Title VII and her state-law claim of IIED. The court granted the County's motion as to Seibert's quid pro quo sexual harassment claim under § 1983, her claim for IIED against the County and Byrd in his official capacity, any purported state-law tort claim of sexual harassment, all claims for punitive damages under § 1983 and state law, and any claims for lost wages and lost earning capacity. The district court denied

No. 15-60884

the County's motion with respect Seibert's remaining Title VII claims, Seibert's hostile work environment claim under § 1983, and Seibert's claim for emotional damages under § 1983.

The trial commenced in September 2015.  Five witnesses testified: Seibert, James Mick Sears, Chad Powell, and Anthony Lawrence testified for the plaintiff, and Mike Byrd testified for the defense.  At the close of Seibert's case and again at the close of the evidence, Jackson County moved for JMOL as to Seibert's claims against the County and Byrd, in his official capacity. Byrd, in his individual capacity, also moved for JMOL on Seibert's IIED claim. The district court denied both Jackson County's and Byrd's motions.

After the three-day trial, the jury found that the defendants were not liable under Title VII; however, the jury returned a verdict in the amount of $260,000 against Byrd, in his individual capacity, on Seibert's IIED claim. Upon entry of the final judgment, Byrd, in his individual capacity, filed a motion for JMOL, or in the alternative for a new trial, on Seibert's IIED claim, arguing that Seibert had presented insufficient evidence to support the IIED verdict.  Seibert filed a motion for JMOL on her Title VII harassment claim, arguing that the evidence at trial pointed so strongly and overwhelmingly in her favor that reasonable jurors could not reach a contrary conclusion with regard to the Title VII claims.  In the alternative, she requested a new trial on the grounds that verdict was against the weight of the evidence; that the verdict was inconsistent; and that the jury instructions were improper.  She also sought JMOL or a new trial on her quid pro quo claim.   On December 9, 2015, the district court entered a Memorandum Opinion and Order granting Byrd's motion and denying Seibert's motion; Seibert timely appealed.

II

Seibert argues that the district court erred in denying her motion for JMOL as to her Title VII hostile work environment claim; in granting Byrd's

4

No. 15-60884

motion for JMOL as to her IIED claim; in denying her motion for a new trial on her hostile work environment claim; and in granting Bryd's and the County's motions for summary judgment on her quid pro quo claim.

A

"We review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court." *Foradori* v. *Harris*, 523 F.3d 477, 485 (5th Cir. 2008). A JMOL is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." FED. R. CIV. P. 50(a). "When a case is tried to a jury, a motion for judgment as a matter of law 'is a challenge to the legal sufficiency of the evidence supporting the jury's verdict.'" *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016) (quoting *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014)). In resolving such challenges, we must draw "all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party" and uphold the verdict "unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* (quoting *Heck*, 775 F.3d at 273).

However, "[c]hallenges to the sufficiency of the evidence must be raised in a Federal Rule of Civil Procedure 50(a) motion for judgment as a matter of law before submission of the case to the jury." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 995 (5th Cir. 2008) (quoting *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 960 (5th Cir. 1998)). Where a party failed to raise a Rule 50 motion for JMOL before the case went to a jury, this court considers the sufficiency of the evidence under a plain error standard of review. *Id.* Under the plain error standard, we will reverse "only if the judgment complained of results in a 'manifest miscarriage of justice.'" *Id.* (quoting *Flintco*, 143 F.3d at 963-64).

5

No. 15-60884

Unlike Byrd and the County, Seibert did not move for JMOL before the case went to the jury. Seibert does not deny this on appeal. Instead, she argues that her failure constitutes "technical noncompliance with Rule 50" that should be excused. Seibert points to *MacArthur v. University of Texas Health Center*, 45 F.3d 890, 896 (5th Cir. 1995), in which we observed, "In certain limited situations . . . we have excused technical non-compliance with Rule 50(b)." She does not, however, explain how her failure to move for JMOL at any point before the case was submitted to the jury amounts to only "technical" noncompliance, nor does she demonstrate that her case meets the strict limitations outlined in *MacArthur*.

In *MacArthur*, we explained, "Whether technical noncompliance with Rule 50(b) precludes a challenge to the sufficiency of the evidence on appeal 'should be examined in the light of the accomplishment of its particular purposes as well as in the general context of securing a fair trial for all concerned in the quest for truth.'" *Id.* (quoting *Bohrer v. Hanes Corp.*, 715 F.2d 213, 217 (5th Cir. 1983)). But in both *MacArthur* and *Bohrer*, we considered situations in which noncompliance was truly *technical*: in both cases, the district court had reserved ruling on a defendant's motion for directed verdict made at the close of the plaintiff's evidence, but the defendant had failed to make a renewed motion at the conclusion of all the evidence. *Id.* at 897; *Bohrer*, 715 F.2d at 217. Here, no motion was taken under advisement; neither the court nor the defendants were put on notice that a challenge to the sufficiency of the evidence was forthcoming.

In *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 572-73 (5th Cir. 2002), we reiterated the limits of the exception recognized in *Bohrer* and *MacArthur*:

> Generally, . . . we have only excused departures from Rule 50(b) where the trial court had taken under advisement an earlier

6

> motion for directed verdict, which was made after the plaintiff rested;  the defendant presented no more than two witnesses prior to closing; only a few minutes elapsed from the time the motion for directed verdict was made and the conclusion of all the evidence; and no rebuttal evidence was introduced by the plaintiff.

We concluded, "In the absence of the circumstances stated above, we have found that the purposes of the rule have not been satisfied, and therefore, the complaining party has waived its right to contest the jury's verdict on sufficiency of the evidence grounds." *Id*. at 573.  Because Seibert wholly failed to move for JMOL before the case went to the jury, plain error review applies.

"On plain error review 'the question before this Court is not whether there was substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict.'" *Id*. (quoting *McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993)).  "If any evidence supports the jury verdict, the verdict will be upheld." *Id*. (quoting *Flintco*, 143 F.3d at 964).  In this case, there was some evidence to support the jury's verdict on Seibert's Title VII claims: Byrd testified at trial and denied all of the allegations made against him.  Because some evidence supports the jury's verdict, the district court did not plainly err in denying Seibert's Rule 50 motion.  *Stover*, 549 F.3d at 995.

B

We review the district court's decision to grant a motion for JMOL de novo. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015) (citing *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003)).  JMOL is only appropriate when "a party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1).   The court must "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light

most favorable to the non-moving party." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (quoting *Brown v. Bryan County, OK.*, 219 F.3d 450, 456 (5th Cir. 2000)).

Moving for JMOL, Byrd argued, "In light of the jury's finding that Byrd did not sexually harass the Plaintiff, there was clearly insufficient evidence upon which the jury could find that Byrd was liable for intentional infliction of emotional distress." Granting the motion, the district court adopted Byrd's logic: rather than considering all of the evidence that had been presented to the jury, the district court focused exclusively on evidence of non-sexual harassment, i.e., Byrd's alleged retaliation for Seibert's grand jury testimony. The district court concluded:

> No rational juror could view the evidence and conclude that Defendant Byrd's visit to Plaintiff's office after her grand jury testimony – particularly when decoupled from the evidence of sexual harassment which the jury apparently disbelieved – was "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

(Quoting *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013)). On appeal, Byrd defends the district court's "decoupling" of the evidence by pointing to this court's decision in *Carroll v. Hoechst Celenese Corp.*, 204 F.3d 1118 (5th Cir. 1999) (unpublished).

In *Carroll*, as in this case, the plaintiff brought claims under Title VII and under state law for IIED. *Id.* at *1. The jury returned a verdict finding that defendant Hoechst Celenese Corporation (HCC) had violated Title VII, but that Carroll did not prove individual damages resulting from the violation; the jury also found HCC liable for IIED and awarded Carroll $250,000 in compensatory and punitive damages. *Id.* at *1. Carroll moved for a new trial on issue of the absence of damages for the Title VII violation. *Id.* at *4. The

district court denied the motion. *Id.* HCC moved for JMOL on, inter alia, the IIED claim; the district court denied that motion as well. *Id.*

This court affirmed the denial of a new trial but reversed the denial of JMOL. *Id.* at *9. Affirming denial of Carroll's motion for a new trial, we agreed with the district court that there was "at least one logical interpretation of the jury's award: it believed that the injury suffered by Carroll was the result of acts which constituted intentional infliction of emotional distress yet which did not constitute sexual harassment." *Id.* at *2; *8.

Because the *Carroll* court reconciled the two verdicts by supposing that the jury may have considered non-sexual conduct in returning the verdict for IIED, Byrd interprets *Carroll* to "indicat[e] approval for the type of analysis that the district court applied [in this case]." This interpretation is plainly flawed. The *Carroll* court did not refuse to consider evidence that was inconsistent with the jury's denial of damages for the Title VII violation; instead, it attempted to reconcile the two verdicts using all of the evidence presented. A more analogous analysis for purposes of the present case would be to assume that the jury credited Seibert's testimony about Byrd's sexual behavior, but conclude that it determined that she had failed, for some other reason, to establish that Byrd's actions met the legal definition of sexual harassment. To prevail on a sexual harassment-based claim of hostile work environment against a supervisor under Title VII, an employee must prove: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst'l Div.*, 512 F.3d 157, 163 (5th Cir. 2007). The jury thus could have believed that Byrd subjected Seibert to unwelcome sexual harassment but concluded that this harassment did not affect a term, condition, or privilege of employment.

No. 15-60884

By decoupling the evidence and considering only testimony that related to nonsexual conduct, the district court plainly ignored this court's direction to "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Flowers,* 247 F.3d at 235. This error, however, is not dispositive, as we "will affirm the district court if the result is correct, 'even if . . . affirmance is upon grounds not relied upon by the district court.'" *Weiser-Brown*, 801 F.3d at 525 (quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997)). It is therefore necessary to determine whether, considering all of the evidence, "the facts and inferences point 'so strongly and overwhelmingly in [Byrd's] favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers*, 247 F.3d at 235 (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)).

Under Mississippi law, "a party may recover for intentional infliction of emotional distress, 'where there is something about the defendant's conduct which evokes outrage or revulsion.'" *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 290 (Miss. 2007) (quoting *Morrison v. Means*, 680 So.2d 803, 806 (Miss. 1996)). "The standard is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Id.* (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So.2d 648, 659 (Miss. 1995)).

"A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So.2d 845, 851 (Miss. 2001). "Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.* (quoting *Pegues v. Emerson Elec. Co.*, 913 F.Supp. 976, 982-83 (N.D. Miss. 1996)). Conduct that has been held to rise

to the level of intentional infliction of emotional distress includes a manager "saying that 'the monkeys could go to work or go to the rope;' segregation of black and Mexican employees; and requiring the black workers to do harder manual labor than the Mexican laborers." *Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1048 (Miss. 2007). On the other hand, conduct that does not rise to the level of intentional infliction of emotional distress includes "such actions as a law firm breaching an employment contract with an attorney, locking him out, refusing him secretarial support and dropping his name from the firm sign," *Speed v. Scott*, 787 So.2d 626, 630 (Miss. 2001), and an employer's attempts "to force [an employee] to quit his job as a security officer by giving him a grueling work schedule," *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 278 (5th Cir. 2013).

Here, considering all of the evidence, the facts and inferences do not point "so strongly and overwhelmingly" in Byrd's favor that reasonable jurors could not return a verdict finding him liable for intentional infliction of emotional distress. *Flowers*, 247 F.3d at 235. Crediting Seibert's testimony, reasonable jurors could believe that, over the course of several months, Byrd put his face close to Seibert's and said, "You know you want to kiss me"; put his hand on the inside of her leg and said, "I want to taste your pussy"; touched her buttocks; repeatedly asked her, "When are we going to get together?"; reminded her, "I gave you sergeant and I can take it away" when she refused his advances; and moved her office closer to his to give him "easier access" to her. The allegations of continual, persistent sexual harassment in this case are not allegations of unfair employment decisions like those at issue in *Speed* and *Roebuck*; they are far more analogous to the allegations of sustained racial harassment in *Jones*. Indeed, a reasonable jury could fairly conclude that Byrd subjected Seibert to "a pattern of deliberate, repeated harassment over a period of time," *Lee*, 797 So.2d at 851, that constituted intentional, outrageous

conduct, *see Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) (manager's continued sexual harassment of employee was extreme and outrageous).

Because a reasonable jury would have a legally sufficient evidentiary basis to find for Seibert on the issue of IIED, we find that the district court erred in granting Byrd's motion for JMOL.  FED. R. CIV. P. 50(a)(1).

## C

A district court has discretion to grant a new trial under Rule 59(a) of the Federal Rules of Civil Procedure when it is necessary to do so "to prevent an injustice." *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993).  The decision to grant or deny a motion for new trial is a matter for the trial court's discretion; we will reverse its ruling only for an abuse of that discretion. *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 164 (5th Cir. 1990).  "Absent 'a clear showing of an abuse of discretion,' we will not reverse the trial court's decision to deny a new trial." *Duff v. Werner Enterprises, Inc.*, 489 F.3d 727, 729 (5th Cir. 2007) (quoting *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998)).  As to all three of her arguments, Seibert fails to meet this heightened burden.

Under our precedent, "[a] trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).  In other words, the movant must show "an absolute absence of evidence to support the jury's verdict." *Id.*  As previously noted, here there was some evidence to support the jury's verdict on Seibert's Title VII claims: Byrd testified at trial and denied all of the allegations made against him.  The fact that the jury found in Seibert's favor on her intentional infliction of emotional distress claim has no bearing; as explained above, the jury could have believed that Byrd subjected Seibert to unwelcome sexual harassment but concluded

that this harassment did not affect a term, condition, or privilege of employment.  *See Lauderdale*, 512 F.3d at 163.

For the same reason, the jury's verdict was not inconsistent—there is a logical way to reconcile the jury's finding of liability on the intentional infliction of emotional distress claim with the finding of no liability on the Title VII claim.  *See Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978) ("Answers [to special interrogatories] should be considered inconsistent . . . only if there is no way to reconcile them.").

Finally, Seibert has failed to demonstrate that the district court incorrectly instructed the jury on the applicable law.  Seibert did not appeal the district court's refusal to issue her requested jury instruction.  Nor does she argue that the jury was actually incorrectly instructed on the law of municipal liability.  Instead, she claims that she offered a "similar, but clearer" instruction on this issue, and that "the jury was left confused about these issues and the law related thereto."  The district court did not clearly abuse its discretion by refusing to grant a new trial on the grounds that a jury instruction, although correct, was not as clear as it could have been.  *See United States v. Ramos*, 537 F.3d 439, 465 (5th Cir. 2008) ("To the extent that the defendants argue that the instructions could have better explicated the theory of the defense, they are not entitled to a preferred wording in the jury instructions."); *Cf. Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 505 (5th Cir. 2012) (district court's refusal to give requested instruction is reversible error if it (1) was a substantially correct statement of law; (2) was not substantially covered in charge as a whole; and (3) concerned an important point in trial), *cert. denied*, 133 S. Ct. 1585 (2013).

## D

Seibert argues that the district court erred in granting Byrd's and the County's motions for summary judgment on her *quid pro quo* harassment

claim.  In the district court's December 9 Memorandum Opinion and Order, the district court considered Seibert's motion for JMOL or, alternatively, a new trial as to her quid pro quo harassment claim; the court concluded that Seibert waived that claim when she failed to list it in the pretrial order.  *See, e.g.*, *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 335 (5th Cir. 2008) ("If a claim or issue is omitted from the [pretrial] order, it is waived." (alteration in original) (citation omitted)); *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) ("Once the pretrial order is entered, it controls the course and scope of the proceedings under Federal Rule of Civil Procedure 16(e), and if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint.").  In her opening brief Seibert did not challenge this conclusion, and in her reply brief she fails to discuss her quid pro quo claim.  We must therefore determine that any argument relating to this claim is forfeited.  FED. R. APP. P. 28(a)(8)(A).

## III

Because that the district court erred in "decoupling" the evidence when considering Byrd's motion for JMOL, we REVERSE the district court's judgment on that issue and REMAND for reinstatement of the jury's verdict and entry of judgment thereon.  The district court's judgment is AFFIRMED in all other respects.